## LONG v. SHELTON.

(Court of Civil·Appeals of Texas. Texarkana.
March 21, 1913. Rehearing De-
nied April 3, 1913.)

**1. VENDOR AND PURCHASER (§ 242*)—BONA
FIDE PURCHASER—BURDEN OF PROOF.**

Defendant in trespass to try title claiming
as a bona fide purchaser without notice under a
deed subsequent to that of plaintiff had the
burden of proving payment of a valuable con-
sideration and want of notice.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 603–605; Dec. Dig. §
242.*]

**2. VENDOR AND PURCHASER (§ 238*)—BONA
FIDE PURCHASER—PURCHASER FROM BONA
FIDE PURCHASER.**

A purchaser from a bona fide purchaser for
a valuable consideration is protected by that
purchase, regardless of the fact that he knew of
an adverse claim under a prior deed.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 580–582; Dec. Dig. §
238.*]

**3. TRIAL (§ 141*)—QUESTION OF LAW OR FACT
—CREDIBILITY OF WITNESSES.**

It is the province of the jury, not only to
draw inferences and conclusions from the testi-
mony of witnesses but to pass on their credi-
bility as well, but when witnesses testify by
deposition and are uncontradicted, and nothing
is disclosed which tends to impeach their credi-
bility and but one inference can be drawn from
their testimony, the court may assume its
truth.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 336; Dec. Dig. § 141.*]

**4. APPEAL AND ERROR (§ 1062*)—REVIEW—
HARMLESS ERROR—RULES OF COURT.**

Under rule 62a for Courts of Civil Ap-
peals (149 S. W. x), providing that no judg-
ment shall be reversed for error of law at the
trial, unless the court is of the opinion that
the error was such a denial of appellant's right
as to cause the rendition of an improper judg-
ment, the court will not reverse for refusal to
submit an issue of notice, where there is no
probability that a jury would have determined
the question differently.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4212–4218; Dec. Dig. §
1062.*]

**5. STIPULATIONS (§ 14*)—CONSTRUCTION—
STIPULATION AS TO ISSUES.**

An agreement in trespass to try title,
where the answer was a general denial and a
plea of not guilty, that plaintiff and defendant
both claimed under one K. as common source
of title, not in any way modified or restricted,
will be construed as intended to cover all that
was put in issue by the pleadings, as affirming
that K. held title, and to relieve both parties
from the necessity of connecting themselves
with title prior to the common source.

[Ed. Note.—For other cases, see Stipulations,
Cent. Dig. §§ 24–37; Dec. Dig. § 14.*]

**6. STIPULATIONS (§ 18*)—EFFECT—COMMON
SOURCE OF TITLE—RIGHT TO ATTACK.**

In trespass to try title, where both par-
ties agreed that they claimed under a common
source of title, defendant could not impeach
such title by showing a superior title from the
sovereignty of the soil independent of his·deed
from the common source.

[Ed. Note.—For other cases, see Stipulations,
Cent. Dig. §§ 41–54; Dec. Dig. §·18.*]

**7. TRESPASS TO TRY TITLE (§ 38*)—BURDEN·
OF PROOF—WANT OF TITLE IN ·COMMON
SOURCE.**

When the common source has been shown
by the introduction of deeds or other muni-
ments of title, the defendant cannot defeat the
plaintiff's recovery by merely showing an out-
standing title anterior to the common source,
but must go further, and show that the com-
mon source had no title.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. § 53; Dec. Dig. § 38.*].

**8. TRESPASS TO TRY TITLE (§. 38*)—BURDEN·
OF PROOF.**

In trespass to try title, the plaintiff must
show a good title in himself.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. § 53; Dec. Dig. § 38.*]

**9. TRESPASS TO TRY TITLE (§ 40*)—ADMISSI-
BILITY OF EVIDENCE.**

In trespass to try title, where defendant
claimed a part of the land by a chain of title
from a patentee, the report of a commissioner
in partition, who was the grantee of the paten-
tee at some uncertain date, and was not shown
to have ever been divested of title, allotting the
lands to defendant's predecessors, could not be
considered a circumstance to prove a transfer
from him, without a showing that he had pre-
viously held ·title.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. §§ 55–61; Dec. Dig. §
40.*]

**10. ESTOPPEL (§ 80*)—ESTOPPEL BY CONDUCT.**

To establish a title in the heirs of an al-
lottee of land by estoppel as against a commis-
sioner in partition who appeared in their chain
of title as a grantee from the patentee, it
would be necessary to prove that the commis-
sioner at the time the partition was made held
the title to the land, that the heirs were igno-
rant of the true status of the title, and were by
this conduct induced to alter their position
with reference to their property rights.

[Ed. Note.—For other cases, see Estoppel,
Cent. Dig. §§ 214, 215; Dec. Dig. § 80.*]

**11. ESTOPPEL (§ 116*)—ESTOPPEL BY CON-
DUCT.**

The burden of proving the facts which con-
stitute an estoppel by conduct rests upon the
party claiming the benefit of the estoppel.

[Ed. Note.—For other cases, see Estoppel,
Cent. Dig. § 306; Dec. Dig. § 116.*]

**12. TRESPASS TO TRY TITLE (§ 41*)—SUFFI-
CIENCY OF EVIDENCE—TITLE IN COMMON
SOURCE.**

Evidence in trespass to try title *held* in-
sufficient to show that the common source had
title at the time he made the conveyance to
plaintiff.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. §
41.*]

**13. TRESPASS TO TRY TITLE (§ 38*)—BURDEN
OF PROOF—WANT OF TITLE IN COMMON
SOURCE.**

Plaintiff in trespass to try title seeking to
defeat defendant's claim under a better title
from the common source must show that the
common source had no title.

[Ed. Note.—For other cases, see Trespass to
Try Title, Cent. Dig. § 53; Dec. Dig. § 38.*]

**14. WILLS (§ 481*)—TITLE OF DEVISEE—
WHEN EFFECTIVE.**

An estate by devise takes effect immedi-
ately upon the death of the testator, unless
otherwise directed.

[Ed. Note.—For other cases, see Wills, Cent.
Dig. §§ 1005–1007; Dec. Dig. § 481.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**15. WILLS (§ 481*)—PROBATE OF FOREIGN
·WILL—EFFECT ON TITLE.**

Rev. St. 1895, art. 5353, providing for recording a foreign will after it has been probated according to the laws of the state in which the testator died, and article 5355, providing that such wills after probate and record should take effect as a deed of conveyance of the property from the time when it was delivered for record, were not intended to fix the time when the title to the property devised should vest; but, when it has been probated, the title of the devisee relates back to and becomes effective from the death of the testator, the same as title under a domestic will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1005–1007; Dec. Dig. § 481.*]

Appeal from District Court, Bowie County; P. A. Turner, Judge.

Action by L. D. Long against I. W. Shelton. Judgment for .defendant, and plaintiff appeals. Affirmed.

See, also, 126· S. W. 40.

Chas. S. Todd, of Texarkana, for appellant. Mahaffey, Thomas & Hughes and N. L. Dalby, all of Texarkana, and J. B. Manning, of New Boston, for appellee.

HODGES. J. Appellant sued the appellee for the recovery of 177 acres of the Jonathan Collum survey situated in Bowie county. Appellee answered by a plea of not guilty. The principal assignment is one which complains of the action of the court in giving a peremptory instruction to find for the defendant.

It was agreed upon the trial that Francis Kirby was the common source of title. Appellant offered in evidence a deed from Francis Kirby to himself, dated . February 17, 1896. This deed was not recorded until October 17, 1907, and after the institution of this suit. Appellee offered in evidence, as his chain of title from the common source, the will of Francis Kirby probated in McNairy county, Tenn., and which was filed and recorded in Bowie county, Tex., March 26, 1904. By the terms of this will Francis Kirby devised all of his land in Bowie county to his wife, Nancy Kirby. He next offered in evidence a deed from Nancy Kirby to her son James Kirby, dated December 23, 1901, and recorded in Bowie county October 26, 1903. He then offered in evidence a deed from James Kirby to himself, dated March 24, 1904, and recorded in Bowie county March 31, 1904.

[1] It will thus be seen that appellant holds the older deed from Francis Kirby, and is entitled to recover unless the appellee, or those under whom he claims, purchased for a valuable consideration and without notice of this prior conveyance. The burden of proving the payment of a valuable consideration and the lack of notice rested upon the appellee. He depends for that proof upon the testimony of Nancy Kirby and James Kirby,. both of whom testified by deposition. Nancy Kirby testified that she was the wife

of Francis Kirby, and that her husband lived and died in Tennessee; that he died there in 1899 at the age of 71 years; that at the time of his death he claimed and owned the land in controversy, and willed it to her; that she conveyed the same land to her son, James Kirby, in exchange for 50 acres of land situated in McNairy county, Tenn., which she valued at $500; that at the time she made this sale and conveyance she knew nothing of any claim of the appellant to the Bowie county land. James Kirby testified that he bought the tract of land in controversy from his mother in December, 1901, and as the consideration conveyed to her 50 acres of land he then owned in Tennessee which he valued at $500; that at the time of his purchase from his mother he had no knowledge or notice of any kind that the appellant claimed to own any part of the Bowie county land, or claimed an interest in it, or, that he claimed to have purchased the land from. his father, Francis Kirby. This witness also resided in Tennessee. The appellee testified that he bought from James Kirby and paid $500 for the land; that at the time of his purchase he knew nothing of appellant having any claim or deed to this land. There was other testimony tending to show that appellee did have notice that appellant was claiming the land.

[2] If James Kirby purchased from his mother without notice and paid a valuable consideration, the appellee, as his vendee, would be protected by that purchase, regardless of the fact that he knew of the appellant's adverse claim. Wallace v. Campbell, 54 Tex. 90; Hickman v. Hoffman, 11 Tex. Civ. App. 605, 33 S. W. 257; Long v. Fields, 71 S. W. 774. The question then is, Was the court authorized to assume as a matter of law that the testimony of James Kirby and that of his mother were true; or should he have submitted the issues upon which they testified to the jury?

[3] Generally speaking, it is the province of the jury, not only to draw inferences and conclusions from the testimony of witnesses, but to pass upon their credibility as well. But when the witnesses testify by deposition and are uncontradicted, and nothing is disclosed which tends to impeach their credibility, and but one inference can be drawn from their testimony, the court may assume the truth of their statements. Thorn v. Frazer, 60 Tex. 259; King v. Worthem, 37 S. W. 1133; Henderson v. Jones, 2 Posey, Unrep. Cas. 230; Teal v. Terrell, 58 Tex. 257. In this case there is no circumstance which in the least tends to contradict the testimony of James Kirby or of his mother upon the material facts bearing upon the main issue to be here considered. The fact that James Kirby resided in Tennessee, several hundred miles from the land and from the claimant, is a circumstance strongly in his favor as to the absence of any knowledge or notice of

appellant's adverse claim. While Kirby was a warrantor to the appellee, and to this extent may be considered as interested in the result of this litigation, he was also a warrantee of his mother, and was protected by that warranty against an ultimate loss.

[4] There is no probability that a jury would have determined the question of notice differently had it been submitted to them, and for that reason alone we do not feel disposed to reverse this judgment because of the refusal to submit that issue. Rule 62a (149 S. W. x). If we are correct in this conclusion, it follows that Shelton has shown the better title under the common source, and is entitled to recover.

[5, 6] But appellant contends that he has shown a superior title to a two-fifths undivided interest in the land from the sovereignty of the soil, independent of the deed from Francis Kirby. The record contains this agreement, appearing as a part of the evidence coming from the appellant: "It was agreed that plaintiff and defendant both claim under Francis Kirby as common source of title." It has been expressly held in this state that, where the parties have agreed as to the common source, they cannot impeach the validity of the title in the common source. Swearingen v. Reed, 2 Tex. Civ. App. 364, 21 S. W. 383; Wallace v. Berry, 83 Tex. 330, 18 S. W. 595; Crabtree v. Whiteselle, 65 Tex. 111; Skov v. Coffin, 137 S. W. 450; Evans v. Foster, 79 Tex. 50, 15 S. W. 170. In the last case cited the court, in disposing of an objection to a charge which instructed the jury that certain title papers back of the common source were sufficient to establish plaintiff's title, said: "This assignment cannot be sustained, for the reason that the defendant filed an abstract of his title under the statute, in which he stated that he claimed under M. J. Brinson as common source. M. J. Brinson having acquired title through the transfer of the certificate by Rachel Milliken to Leonard, the defendant could not question the validity of that or any other link in the chain of title between the sovereignty of the soil and the admitted common source. Pearson v. Flanagan, 52 Tex. 279; Glover v. Thomas, 75 Tex. 507, 12 S. W. 684." The other cases referred to are more specific upon the proposition above stated. Counsel for appellant seeks to evade the force of that rule by insisting that the agreement copied above applied only to three-fifths of the land in controversy. The agreement is in the language quoted, and it is not otherwise contended that it was in any way modified or restricted in its meaning or application. The title to all of the land is involved in this suit. The petition was in the usual form of trespass to try title, while the answer consisted of a general demurrer and a plea of not guilty. We must therefore assume that, when the parties made this agreement, it was intended to cover all that was put in issue by the pleadings. The ef-

fect of this agreement was to affirm that Francis Kirby held the title, and to relieve both parties from the necessity of connecting themselves with the title prior to the common source. Glover v. Thomas, 75 Tex. 507, 12 S. W. 684. It was as binding upon the plaintiff as upon the defendant.

[7] When the common source has been shown in the usual manner by the introduction of deeds or other muniments of title, the defendant is not permitted to defeat the plaintiff's right to recover by merely showing an outstanding title anterior to the common source. He must go further, and show that the common source in fact has no title. Cocke v. T. & N. O. Ry. Co., 46 Tex. Civ. App. 363, 103 S. W. 407; Rice v. Railway Co. et al., 87 Tex. 90, 26 S. W. 1047, 47 Am. St. Rep. 72.

[8] The burden is certainly none the less onerous on the plaintiff in showing a good title in himself.

[9-11] Conceding that the appellant, notwithstanding his agreement, could show a superior title in himself independent of the common source, has he done so? The following is his chain of title: Patent from the state of Jonathan Collum in 1844; deed from the heirs of Jonathan Collum to Robert Crossland, no date given; deed from A. S. Justice to C. Elliott and Reuben Long, dated 1856; deed from W. C. Walker and wife and five heirs of Reuben Long, conveying a two-fifths interest to C. M. Cason, dated 1873; deed from heirs of C. M. Cason to the appellant, dated 1906; deed from three heirs of Reuben Long to Francis Kirby, conveying a two-fifths interest, dated 1873. These instruments show a title in Robert Crossland with which neither party is directly connected. Appellant offered in evidence a report of commissioners appointed by the probate court in 1857. That portion of the report contained in the record is as follows: "Robert Crossland and C. Crossland and G. M. Collum, Commissioners, to Heirs of Reuben Long, dec'd. Report of Commissioners, dated August 31st, 1857. Recorded in volume D, page 224, in office of county clerk, Bowie county, Texas. Description and remarks: This is the report of the commissioners appointed at August term, 1856, of probate court, to partition the land belonging to the estate of Reuben Long, deceased, between Cyrus Elliott and the legal representatives of Reuben Long, deceased, they being the heirs thereof, said commissioners report that they have allotted and set apart to the legal heirs of Reuben Long, deceased, one labor of land, the Jonathan Collum H. R. Survey; which said report was by said court received, approved and in all things confirmed, and it was ordered that title to said property be vested and divested accordingly."

This report and the order approving it could be considered material evidence in this case only for two purposes: (1) As a circumstance to show that Robert Crossland

had previously parted with his title and that Reuben Long or his heirs had acquired it; or (2) that Crossland and those claiming under him are estopped from thereafter asserting title to the land which he as a commissioner allotted to the heirs of Reuben Long. Assuming from the mere similarity of names that the grantee of Collum's heirs is the same Robert Crossland who acted as commissioner in the partition proceedings referred to above, there is no evidence in the record which shows when Crossland acquired his title, or when he disposed of it. In order for this conduct on the part of Crossland to be considered a circumstance to prove a transfer from him, it must first be shown that he previously held the title. In the absence of any proof of that fact, his conduct in allotting the land to the heirs of Reuben Long would be entitled to no evidentiary value upon that issue. To establish a title in the heirs of Reuben Long by estoppel, it would also be necessary to prove that at the time this partition was made Crossland held the title to the land which it is claimed he, with others, allotted to the heirs of Reuben Long; that these heirs were ignorant of the true status of the title, and were by this conduct induced to alter their position with reference to their property rights. Bynum v. Preston, 69 Tex. 287, 6 S. W. 428, 5 Am. St. Rep. 49; Burleson v. Burleson, 28 Tex. 283; Page v. Arnim, 29 Tex. 53; Scoby v. Sweatt, 28 Tex. 713. The burden of proving the facts which constitute an estoppel by conduct rests upon the party claiming the benefit of the estoppel. That an owner would knowingly or ignorantly concur in the gratuitous allotment of his own land to another in a judicial proceeding to which he was not a party is too improbable to be assumed as a fact without evidence more satisfactory than that furnished by this record. The failure to connect himself with the patentee, Jonathan Collum, is a fatal defect in the appellant's chain of title outside of the common source.

[12] The facts relied upon by the appellant are also insufficient to negative the fact that Francis Kirby did acquire the title, and held it at the time he made the conveyance offered in evidence. The fact that his title does not appear of record is not inconsistent with the inference that he may have acquired it from a source, and in a manner, not disclosed by the record.

[13] If in order to defeat the claim of a plaintiff deraigning title from a common source it devolves upon the defendant to show that the common source had no title, the duty is certainly no less onerous upon the plaintiff when seeking to defeat the defendant claiming under a better title from the common source.

[14, 15] It is also insisted by appellant that the court could not treat the appellee, or those under whom he claimed, as inno-

cent purchasers for value, because it appears from the evidence that the will of Francis Kirby was made in Tennessee, and was not recorded in Bowie county till after the appellee had notice of the appellant's adverse claim. This contention seems to be based upon the proposition that the title of Mrs. Nancy Kirby as a devisee dates only from the time the will was recorded in Bowie county. In support of that proposition we are referred to articles 5353 and 5355 of the Revised Civil Statutes of 1895. The first article referred to makes provision for recording a foreign will after it has been duly probated according to the laws of the state in which the testator died. This dispenses with the necessity of probating such wills in this state as was formerly required. Article 5355 is as follows: "Every such will and testament, or testamentary instrument, and its probate, which shall be attested and proven, as provided in article 5353, and delivered to the clerk of the proper court to be recorded, shall take effect and be valid and effectual as a deed of conveyance of said property, and the record thereof shall have the same force and effect as the record of deeds or other conveyances to land from the time when such instrument was delivered to such clerk to be recorded, and from that time only." An estate by devise takes effect immediately upon the death of the testator unless otherwise directed, and the property then passes to the devisee. The different legal requirements as to probating and recording wills are merely designed as means to substantiate, preserve, and give notice of such instruments as evidences of title. The article of the statute quoted is not susceptible of the construction put upon it by the appellant. The language used was not intended to fix the event or the time when the title to the property devised should vest in the devisee, but to prescribe certain requirements as conditions precedent to the use of the foreign will as evidence of title and notice of its existence. The language is: "The record thereof shall have the same force and effect as the record of deeds or other conveyances to land from the time when such instrument was delivered to such clerk to be recorded, and from that time only." Poole v. Jackson, 66 Tex. 380, 1 S. W. 75. A domestic will cannot be used as evidence of title till it has been probated. Moursund v. Priess, 84 Tex. 556, 19 S. W. 775; Ochoa v. Miller, 59 Tex. 460. But, when it has been probated, the title of the devisee relates back to the death of the testator, and becomes effective from that date. March v. Huyter, 50 Tex. 243; Ryan v. Railway Co., 64 Tex. 239. The same legal effect should be given a foreign will, subject, however, to the rights of supervening purchasers without notice. The evidence shows that the land was unenclosed and unoccupied, and that the acts of ownership exercised by

the appellant were not sufficient to give actual notice of his adverse claim.

The judgment is affirmed.