YATES v. CASWELL et al.    (No. 1262.)

(Court of Civil Appeals of Texas. Texarkana.
June 10, 1914. Rehearing Denied
June 25, 1914.)

1. MORTGAGES (§ 38*) — ABSOLUTE DEED AS MORTGAGE—SUFFICIENCY OF EVIDENCE.

In trespass to try title to land conveyed by defendant to plaintiffs' father by a deed which defendant claimed was given to secure a debt, evidence *held* insufficient to support a verdict for plaintiffs.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 108–111; Dec. Dig. § 38.*]

2. MORTGAGES (§ 38*)—CHARACTER OF TRANSACTION—EVIDENCE.

Where, in trespass to try title, the testimony of the notary public who prepared a deed that at the time it was executed the parties agreed that the deed was to secure a debt was uncontradicted, and there was nothing tending to impeach his credibility, the jury had no right to disregard such evidence.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 108–111; Dec. Dig. § 38.*]

3. MORTGAGES (§ 139*)—LOSS OF EQUITY OF REDEMPTION—NECESSITY OF CONVEYANCE.

Where an absolute deed was given to secure a debt, the beneficial interest in the property remained in the grantor until her equity of redemption was conveyed in writing for a valid consideration.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 278; Dec. Dig. § 139.*]

4. EVIDENCE (§ 265*)—ADMISSIONS—CONCLUSIVENESS.

In trespass to try title to land conveyed by defendant to plaintiffs' father by a deed which she claimed was intended to secure a debt, the testimony of one of the plaintiffs that defendant stated that she tried to buy the place and borrow the money, but could not buy it, so plaintiffs' father bought it and she never owned it, would not support a verdict for plaintiffs, in the absence of evidence of title in plaintiffs, except through the deed from defendant to their father; since, if defendant never owned the land, her deed conveyed nothing to plaintiffs' father and they had no title.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. § 265.*]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Action by James Caswell, as guardian of Addie Daniels and another, against Julia Yates. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

E. P. Price, of Tyler, for appellant. Gentry & Castle, of Tyler, for appellees.

HODGES, J. This suit was filed in January, 1909, by Jas. Caswell, as the guardian of Addie and Annie Daniels, against Julia Yates, to recover the possession of a house and lot in the city of Tyler. The petition was in the ordinary form of an action of trespass to try title. This is the second ap-

peal, the former being reported in 126 S. W. 914.

[1] The facts are not materially different from those adduced upon the first trial. The minor plaintiffs claim the land as the children and heirs of Ned Daniels, who died in 1907. As evidence of their title they offered a deed, absolute in form, from the appellant, Julia Yates, purporting to convey the property in controversy to Ned Daniels for a cash consideration of $55, dated July 17, 1905. With proof of heirship the appellees rested their case. The appellant pleaded that this deed from her to Daniels was intended by the parties thereto as a mortgage, and was executed to secure the payment of a debt of $20 due to Daniels. In proof of those facts she offered in evidence the deposition of Joe J. White, a notary public, who testified, in substance, as follows: On July 17, 1905, at the instance of Daniels and Julia Yates, the witness prepared a warranty deed from Julia Yates to Daniels, and took the former's acknowledgment to the same. No other parties were present except the three. Yates and Daniels agreed in the presence of witness that this deed was to secure the payment of a note, which then amounted to $20, held by another party and which was bought by Daniels on that day. That Daniels agreed to deed the property back to Julia Yates when she had paid this note, principal and interest. Witness suggested to the parties at the time that it would be better to draw a mortgage for the purpose of securing this debt; but they had agreed on this form, and carried it through. Henry Donaldson, another witness for the appellant, testified that in January and February of 1905 he did some work for her in the way of finishing a house on her place and for which she paid him. T. C. Williams testified that in March, 1905, he loaned the appellant $55, and to secure its payment took from her a deed of trust on some land. It was subsequently shown that the land embraced in that deed of trust is the same as that involved in this suit. Appellant testified in her own behalf that she had been living on the lot in controversy nearly 23 years, but had owned it only 12 or 13 years; that she built a house on it some months before she executed the deed to Daniels. About 2 years prior to the death of Daniels he began rooming with her, and died at her house in 1907. Daniels had paid the taxes a part of the time for the rent of the room which he occupied. In rebuttal the appellees proved by Addie Patrick, one of the appellees, who had married after the institution of this suit, certain statements made by the appellant before the death of Ned Daniels regarding the ownership of this property. On her direct examination she testified as follows:

"Julia said that Papa paid for the lumber; that is what she said. She told me that when we got to talking about the home place; she told it all concerning the place, all together. She told it all. Papa brought it up, is how she

169 S.W.—70

came to be telling me all about it. Miss Julia told us about the place. She told us that Papa paid for the place, and that that was our home place; 'while you live, this is you-all's home; I haven't got any home at all;' and said, 'The lumber—Ned paid for the lumber and all,' and her brother brought some of the lumber up there and Papa paid her brother for it."

On cross-examination the witness testified as follows:

"Julia said, 'I tried to buy the place and I could not buy it;' and she said, 'Ned got some money from his ma's death, and had money, and I tried to borrow the money from Ned, and Ned would not loan me no money;' and she said she tried to buy the place and could not pay for it. I suppose she could not pay for it. She tried to borrow the money from Papa, and Papa would not loan her the money. She said she tried to buy this place and tried to borrow the money from my father, and she could not buy the place, so he bought the place, and she had never owned it; that is what she said; that she had never owned the place, that is what she said; said she had never owned the place, and tried to borrow money from my father to buy the place, and he would not let her have it; then my father went and bought the place. She said that—I suppose, I don't know—that is what she said. She went in and tried to buy the place, and could not make the money to buy it with. She said she started to buy the place, and said she could not pay for it, and so she said she told Ned: 'Well, Ned, you buy the place; you won't loan me the money to pay for the place.' She told me that she told my father to go and buy the place from the owner—the fellow that owned it; that she did not have money enough and she could not own it; that is what she said."

She further stated that Julia Yates told her that Ned Daniels bought the land from the owner, who she thought "was a fellow by the name of Anderson;" that the conversation she was undertaking to detail took place about a month before her father's death. Julia Yates denied ever having made any of the statements attributed to her by this witness. N. A. Gentry testified that he knew the property in controversy, and that it was worth about $800; that at the date of the deed to Ned Daniels it was worth from $300 to $500. Upon this evidence the jury returned a verdict in favor of the plaintiffs in the suit.

[2] It is now contended, as on the former appeal, that the evidence is not sufficient to support the verdict; and we think that contention should be sustained. According to the testimony of White, this deed to Daniels was a mortgage given to secure the payment of a debt. This testimony was by deposition, was undisputed, and there is nothing in the record which in any way tends to impeach White's credibility. The jury therefore had no right to disregard this evidence. Long v. Shelton, 155 S. W. 945; Yates v. Caswell, 126 S. W. 914.

[3, 4] If this deed executed by Yates to Daniels was at its incipiency a mortgage, it remained such. Once a mortgage always a mortgage is a legal maxim. That being its nature, the beneficial interest in the property— the equity of redemption—remained in Julia Yates until surrendered by her in some legal form. This equity of redemption was an interest in the land, which could only be con-

veyed in writing supported by a valid consideration. Peugh v. Davis, 96 U. S. 332, 24 L. Ed. 775; Mooney v. Byrne, 163 N. Y. 86, 57 N. E. 163; 1 Jones on Mortgages, §§ 250, 251. There was no evidence offered by the appellees tending to show that Julia Yates ever parted with her equity. The testimony of Addie Patrick is clearly inconsistent with the facts upon which the appellees rely for their title. If the statements attributed by her to Julia Yates be true, then the appellees have shown no title, and for that reason are not entitled to recover. They must rely for evidence of title upon the validity of the deed from Julia Yates to Ned Daniels, executed in 1905. If Julia Yates never, in fact, owned the land, then her deed conveyed nothing to Daniels, and the appellees have shown no title from any other source.

This is the second trial of this case, and there appears to be no necessity for remanding it for further development.

The judgment will therefore be reversed and here rendered for the appellant, without prejudice to the right of the appellees to foreclose any lien which they may hold against the property. All costs, both of this court and of the court below, will be adjudged against the appellees.