HOUSTON OIL CO. OF TEXAS et al. v. WILHELM et al.†

(Circuit Court of Appeals, Fifth Circuit. October 3, 1910.)

No. 1,994.

1. VENDOR AND PURCHASER (§ 231*)—RECORDS AS NOTICE—EFFECT OF DESTRUCTION OF RECORD.

In the absence of a statute to the contrary, the record of a deed continues to be constructive notice, notwithstanding its destruction.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 231.*]

2. VENDOR AND PURCHASER (§ 233*)—DESTRUCTION OF RECORD—RIGHTS OF BONA FIDE PURCHASER.

Rev. St. Tex. 1895, art. 4600, which provides that when the record of a deed has been destroyed, and the original deed has been saved, the same may be recorded again, and the last registration shall have force and effect from the filing for original registration, providing the second registration is made within four years next after the destruction of the first record, does not have the effect of depriving the legal owner of his title in favor of a purchaser from a prior owner after the destruction of the record of his deed, although it was not re-recorded within four years, and the second purchase was bona fide, where he did not have the original deed nor know of its whereabouts within the four years.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 233.*]

3. EQUITY (§ 409*)—FINDINGS OF MASTER—WEIGHT.

While the report of a master in an equity suit is not conclusive on the court as to the facts found, it is entitled to weight, and, if the evidence is consistent with it, should be treated as unassailable.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 922; Dec. Dig. § 409.*]

———

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied November 4, 1910.

4. VENDOR AND PURCHASER (§ 229*)—DESTRUCTION OF RECORD—ADVERSE CLAIMANTS—BONA FIDE PURCHASERS.

Evidence that the vendor from whom defendants purchased land refused to affirm or warrant his title, but stated only that the record title was in him, and he had no recollection of having made any prior conveyance and required the purchaser to assume the risk, together with the fact that defendants knew that complainant and its predecessor had claimed title to the land for many years through deeds of record, was sufficient to sustain a finding by a master that defendants were put on inquiry, and were not entitled to protection as bona fide purchasers as against complainant whose title in fact came direct from defendants' grantor through a prior deed subsequently found, but the record of which had been destroyed by fire.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. § 229.*]

5. VENDOR AND PURCHASER (§ 220*)—"BONA FIDE PURCHASE."

The essential elements that make a bona fide purchase are a valuable consideration, the absence of notice, and the presence of good faith.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 220.*

For other definitions, see Words and Phrases, vol. 1, pp. 825–830; vol. 8, p. 7591.]

Appeal from the Circuit Court of the United States for the Southern District of Texas.

Ancillary suit in equity by the Houston Oil Company of Texas and its receiver against Cora Wilhelm and L. Wilhelm, her husband. Decree for defendants, and complainants appeal. Reversed.

T. M. Kennerly and H. O. Head, for appellants.
F. D. Minor and Geo. C. Greer, for appellees.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER, District Judge.

SHELBY, Circuit Judge. This is an ancillary bill filed by the Houston Oil Company of Texas and its receiver against Cora Wilhelm and her husband, L. Wilhelm. The subject of the suit is 800 acres of land, a part of the Ellis league situated in Hardin county, Tex. The purpose of the bill is to quiet title and obtain an injunction against the Wilhelms. No question is raised as to the jurisdiction in equity. A decree of reference was entered, and, after a hearing before the special master, he reported in favor of the complainants. The defendants, the Wilhelms, excepted to the report, and the court below sustained the exceptions and dismissed the bill as to them, and the complainants appeal.

Both the appellants and the appellees deraign title to the land from William G. Wheeler. The appellants have the prior title. The defense asserted by the appellees and sustained by the court below was that they were innocent purchasers for value in good faith and without notice.

William G. Wheeler was seised in fee of the land, and, after so holding it for many years, on February 21, 1881, conveyed it to Henry G. Darcy. Darcy conveyed it to Tryon McInnis, McInnis to William Wiess, Wiess to the Reliance Lumber Company, and the Reliance

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Lumber Company on January 4, 1902, conveyed it to the Houston Oil Company of Texas. The appellants, therefore, as matter of fact, have the legal title which was once vested in Wheeler. On March 12, 1904, William G. Wheeler made to Silas M. Johnson a power of attorney, conveying to him thereby a one-third interest in the 800 acres, and vesting him with the power to sell and convey for said Wheeler his two-thirds interest. On August 13, 1904, more than 23 years after he had conveyed the land to Darcy, William G. Wheeler, by his attorney in fact, Silas M. Johnson, conveyed it to the Wilhelms, the appellees, Johnson at the same time conveying to them his one-third interest. Although Johnson conveyed to both the Wilhelms, the purchase was in fact made for Cora Wilhelm, and her money was used to pay for the land. During the negotiations she was absent part of the time, and L. Wilhelm, her husband, was her agent in making the purchase. By other deeds not material to describe, the husband, L. Wilhelm, caused his apparent interest to be conveyed to his wife, Cora Wilhelm.

The appellants, it is plain, have the prior claim, and are entitled to a favorable decree unless the appellees, as subsequent purchasers, can maintain the defense of bona fide purchasers for value without notice.

The conveyances in the line of title from Wheeler to the appellants were all recorded. The deed from Wheeler to Darcy was filed for record July 13, 1886, and duly recorded in Book M on page 167. In August, 1886, the courthouse of Hardin county was destroyed by fire, and Book M, containing the record of the deed to Darcy, was destroyed. The Wilhelms base their claim to be innocent purchasers without notice on the fact that, when they bought of Wheeler, the title was apparently in him, for the record of his prior conveyance to Darcy had been destroyed. In the absence of a statute to the contrary, the record of the deed would have continued to be notice, notwithstanding its destruction (Paxson v. Brown, 61 Fed. 874, 10 C. C. A. 135; Shannon v. Hall, 72 Ill. 354, 22 Am. Rep. 146); but the Texas statutes, after declaring unregistered deeds void as to subsequent purchasers for value without notice (Rev. St. Tex. 1895, art. 4640), provide that when a record of a deed has been destroyed and the original deed has been "saved or preserved from loss * * * the same may be recorded again, and this last registration shall have force and effect from the filing for original registration: Provided, said originals are recorded within four years next after such loss, destruction or removal of the records. * * *" Rev. St. Tex. 1895, art. 4600. This statute has the effect in cases where it is applicable of preventing the first record of a destroyed deed from being notice to a subsequent purchaser. Magee v. Merriman, 85 Tex. 105, 19 S. W. 1002. The original deed was not destroyed, and it was not filed for re-record till May 9, 1907, much later than four years after the destruction of the record, and after the purchase by the Wilhelms. But it does not appear that it was possible for the deed to be filed for re-record within four years after the fire. On the contrary, it is agreed that "neither the Houston Oil Company of Texas nor its receivers" had the deed in their custody or control until the day before it was filed for re-record, and that they did not know where it was till about

April 21, 1907. So it appears affirmatively that the appellants were not in fault in failing to refile the deed for a second recordation. If the Houston Oil Company had had the deed in its possession, or had known where it was and had failed to refile it, its negligent act would have made it possible for the property to come into the hands of a subsequent purchaser by an apparently valid title. It would then seem just to hold the appellants estopped from asserting their ownership to defeat the subsequent purchasers. But, to quote the language of a learned author who has shed much light on this subject:

"When the prior legal owner is wholly innocent, has done and omitted nothing, it certainly transcends, even if it does not violate, the principles of equity to sustain the claims of a subsequent and even bona fide purchaser." 2 Pomeroy's Eq. Jur. (3d Ed.) § 735.

There seems to be no authority in the settled principles of equity for a court to sustain and enforce the subsequent legal estate merely because the purchaser is a bona fide purchaser for value without notice against the prior legal and equally innocent owner. It is the usual rule that where the suit concerns legal interests, and the complainant is without fault, the defense of innocent purchaser will not prevail. 2 Pomeroy's Eq. Jur. §§ 739, 743. Do the registration statutes of Texas establish a different rule?

We have been referred to no authority construing the Texas statutes showing their effect upon these general principles. Counsel have probably seen, as also appears to us, that the decision of this case does not necessarily depend on the question suggested. This question would only become controlling and necessary to be decided if we should conclude that the evidence sustained the alleged fact that the appellees had purchased, paying value, in good faith and without notice.

The essential elements that make a bona fide purchase are: (1) The valuable consideration; (2) the absence of notice; and (3) the presence of good faith.

The master found, and the proof shows, that the Wilhelms paid $1,200 for the land, so that the first element requires no further attention.

The main contentions in the case bear upon the question of notice. The master found that the circumstances attending the sale and conveyance to the Wilhelms were sufficient to put them upon inquiry and to deprive them of the benefit of their plea of innocent purchasers. This report was not conclusive on the court, but was entitled to weight, and certainly should not be disturbed if sustained by the evidence. If the testimony is consistent with the master's finding, his report "must be treated as unassailable." Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289; Girard Insurance Co. v. Cooper, 162 U. S. 529, 538, 16 Sup. Ct. 879, 40 L. Ed. 1062; Camden v. Stuart, 144 U. S. 104, 12 Sup. Ct. 585, 36 L. Ed. 363. Before their purchase, many facts were brought to the attention of the Wilhelms that tend to sustain the master's report on the question of notice. L. Wilhelm was on the land before the purchase was completed, and saw that the timber had been partly cut, and that some rude huts or cabins had been

erected on it, though they had been long before abandoned. Johnson corresponded with Wheeler about the land, and these letters were exhibited either to Mrs. Wilhelm or to her husband acting as her agent, or to both of them. Johnson and L. Wilhelm were occupying the same office, and the record tends to show that Johnson was not concealing any information that he had from the Wilhelms. The following are excerpts from letters which Wheeler wrote to Johnson and which were seen by the Wilhelms:

"November 20th, 1903.

"Yours 18th received. I have a record title for 800 acres land in Hardin County, on Neches River, with two million feet virgin pine on it, and other timber. The title may not be entirely perfect, but the record shows it in me. * * * If you can sell it will give quitclaim deed."

"December 1st, 1903.

"Your favor 30th received. As I stated before, I would only sell the land with my title; no warranty."

"February 18th, 1904.

"N. A. Rector, a very prominent attorney at Austin, Texas, has gone carefully over the abstract which I have before me, and sums up the matter thus: The real conflict appears to be with Reliance Lumber Company, and their title originates through Darcy, in whom the abstract shows no title.

"Mr. Kennedy, attorney, formerly at Kountze, wrote me that I appeared to have the record title."

"February 25th, 1904.

"Your favor 19th duly received. I have no recollection of having conveyed the land at any time to anybody. As I have before stated, the party buying would have to assume the risk of title and pay your commission as before understood. There is a good speculation in the matter."

It will be observed that he only claimed to have a "record title" "not entirely perfect," that the purchaser was to "assume risk of title."

Wheeler, it seems, was required to make an affidavit as to his title, which was shown to the Wilhelms. He did so, using this language:

"That he has no recollection that he ever conveyed said land, and so still claims the same, as the records from the abstracts show that the title is still in him."

He did not swear that he had not conveyed the land, but merely to his want of recollection on the subject; nor did he say that the title was in him. He only said that "the abstracts show that the title is still in him." Clearly he was relying on the fact that the record of the deed he had made to Darcy had been destroyed. These letters and this affidavit were surely sufficient to excite suspicion as to his belief in his ownership. The report on Wheeler's title made by Rector said, "The land may be well worth incurring expenses of recovery on the halves," showing that Wheeler must sue for title or possession; and Johnson did really sue for it, but it is not clearly shown that the fact of this suit came to the knowledge of the Wilhelms, and it was dismissed before their purchase.

The Wilhelms employed counsel, and were advised that the title of Wheeler which they were about to purchase was good. The advice was given, of course, on the abstracts of title which did not embrace Wheeler's prior conveyance to Darcy. These opinions merely mean

that the abstracts showed the legal title in Wheeler, as they did, the record of his first deed being omitted. The abstracts accompanying these opinions, or at least some of them, showed that the appellants were claiming title from Darcy, and that appellants would have Wheeler's title if a deed was produced from Wheeler to Darcy. Johnson understood this well, and applied to appellants to know if they had such deed. It was, of course, known to Johnson that the appellants claimed the land, and it was probably known, and certainly could have been clearly known, to the Wilhelms. The tax records showed that the appellants and those under whom they claimed had been paying taxes on the land for many years—a fact not of great importance by itself, but one, with others, that would naturally tend to excite inquiry. There was some evidence tending to show that the appellants at the time of the Wilhelms' purchase had a tenant, Elias Ward, on part of the league which included the premises in controversy, but the evidence on this point is not satisfactory. The other circumstances shown by the record, however, some of which we have enumerated, convince us that there was sufficient evidence to sustain the master's report that the Wilhelms purchased with such notice as would put them on inquiry.

But it is urged by the appellees that, if the Wilhelms had made inquiry, they could not have learned the fact that the appellants had the title to the land; that they could not have learned of the existence of the deed made by Wheeler to Darcy. That may be true, or it may not. The deed was in fact found, and is in evidence. Its place of keeping or deposit apparently was not known to the appellants at the time, nor does the record now show where it was found. But the Wilhelms either had knowledge, or they are charged with it, that the appellants were claiming to own the land in fee, and that they and those under whom they claimed had exercised and were exercising such control and possession of it as is usual with uninclosed lands. The rule is that, if it appears that a party obtains knowledge or information of such facts as are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, if prosecuted with reasonable diligence, would certainly lead to a discovery of the conflicting claim, then the inference that he acquired the information constituting actual notice is necessary and absolute. 2 Pomeroy's Eq. Jur. (3d Ed.) § 597. It is sufficient that it would lead to the discovery of the conflicting claim. It is not required that it would lead to the discovery of all the evidence necessary to sustain the conflicting claim. Notice of appellants' claim is sufficient without notice of the burning of the record and the existence of the original deed, because appellants, if the deed had not been found, would have been permitted to prove its execution and delivery by direct or circumstantial evidence, if such evidence could be produced. Bounds v. Little, 75 Tex. 316, 12 S. W. 1109.

If appellants had had a tenant on the 800 acres at the time of the Wilhelms' purchase, this undeniably would have been notice sufficient to defeat the plea of innocent purchaser. 2 Pomeroy's Eq. Jur. (3d Ed.) § 615; Noyes v. Hall, 97 U. S. 34, 24 L. Ed. 909; Ramirez v. Smith, 94 Tex. 184, 59 S. W. 258. Why is this true? Simply be-

cause such possession would have been notice that the appellants claimed and held the land. It would not have been notice of the burnt record and lost original deed; but on the trial the appellants would have been permitted to prove the facts, and produce the original deed if they could. Now, what is the difference if the appellees had knowledge otherwise of appellants' claim to own the land in fee, or notice that would lead to such knowledge? They cannot defeat its effect by the contention that they did not have notice that the appellants would be able to produce on the trial the original deed.

Upon the whole, it does not appear that they bought without notice of appellants' claim, but that they bought with notice, and took the chances or risk of the appellants being able to supply the missing link in their title. The link was supplied, and they must abide the result.

If we had reached a different conclusion, the appellants would have been stripped of their prior legal title without fault or negligence on their part, and yet they would have been without remedy for breach of warranty or otherwise. On the other hand, the appellees probably have a remedy for their loss by action for the breach of warranty contained in the deed made to them by Johnson for himself and Wheeler. But, even if it left them without recourse, we would be constrained to hold that the facts require a confirmation of the master's report.

The decree is reversed, and the cause remanded for further proceedings in conformity with the opinion of this court.