**STEWART et al. v. MARSHBURN et al. ***
(No. 748.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 16, 1922. Rehearing Denied April 5, 1922.)

1. **Husband and wife** ⬥255—**Property paid for from separate estate is separate property.**

Where land conveyed to husband was paid for from his separate estate, it was his separate property.

2. **Husband and wife** ⬥262(1) — **Land purchased presumed community property.**

Land purchased and conveyed to the husband during coverture is presumed to be community property.

3. **Husband and wife** ⬥273(10) — **Apparent legal title to land belonging to husband's separate estate vested in his widow.**

Where husband, who had paid for land from his separate estate and had it conveyed to him, died childless, *held* that the actual legal title to the land descended to and vested in his brothers and sisters, but the apparent legal title vested in his wife, so that a bona fide purchaser from her or her heirs would be protected.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 17, 1922.

**4. Husband and wife ⬅️273(10)—Purchasers from widow of apparent legal title have burden of showing innocent purchase.**

Purchasers from a widow of the apparent legal title of land, which in fact was part of the separate estate of her deceased husband, had the burden of showing that they were innocent purchasers for value, and rested under the same burden as that imposed by law on a junior purchaser against a prior unrecorded deed, that is, they were required to prove both payment of the purchase money and absence of notice of the true legal title when they bought.

**5. Vendor and purchaser ⬅️232(9)—Possession by tenant is notice.**

Where claimant of land had a tenant in possession thereof, this visited a purchaser with full legal notice of whatever title was being claimed.

**6. Tenancy in common ⬅️13—Possession of one tenant possession of all.**

Where the owner of true legal title was a tenant in common with other owners of the true title, its possession through its tenant was the possession of all the tenants in common.

**7. Vendor and purchaser ⬅️232(9)—Possession of tenant is notice of landlord's claim.**

Possession of land by a tenant is notice to all the world of the actual title claimed by the landlord and all of the sources of title through which he claims, and such possession cannot be explained by an apparent title, though consistent with such possession.

**8. Vendor and purchaser ⬅️242—Burden on purchaser of apparent title to show that inquiry as to suit abandoned by claimants of true title would not have given him true facts.**

Where the purchaser of the apparent legal title to land had actual notice of the claim to this land, asserted by the true legal title owners, such notice, as a matter of law, visited him with knowledge of all the facts that an inquiry of the true owners would have disclosed, and, where a suit by the true legal title owners had been abandoned, the burden rested on the purchaser to show that an inquiry as to the facts directed to the true legal title owners themselves would not have disclosed the facts as to the true title.

On Motion for Rehearing.

**9. Husband and wife ⬅️255—Absolute title acquired by husband in land purchased in 1842.**

Where land was purchased by an Alabama citizen in 1842, out of his separate estate and by the laws of that state became his property absolutely, under 2 Gammel's Laws, p. 178, § 4, the husband was vested with both the legal and equitable titles.

**10. Descent and distribution ⬅️11—Husband and wife ⬅️273(1)—Land acquired by husband alone descended by act regulating descent at husband's death.**

Where, under the laws of Alabama at the time land was purchased, it became a husband's absolute estate, it was not included within the terms of 2 Gammel's Laws, p. 178, § 4, as amended by 3 Gammel's Laws, pp. 77, 78, §§

2, 3, and was not covered by its provisions as to descent and distribution, but was separate property of the husband and descended under act approved January 28, 1840 (2 Gammel's Laws, p. 306), entitled "An act to regulate the descent and distribution of intestates' estates."

Appeal from District Court, Tyler County; D. F. Singleton, Judge.

Action of trespass to try title, between Sidney Stewart and others against L. H. Marshburn and others. From judgment for the latter, the former appeals. Reversed, and remanded for new trial.

Kennerly, Lee & Hill, of Houston, Coleman & Lowe, of Woodville, and Orgain & Carroll, of Beaumont, for appellants.

Gordon & Parker, of Beaumont, for appellees.

WALKER, J. This was an action of trespass to try title, involving the George T. W. Collins league in Tyler county. As to that portion involved in this appeal, all parties claim under Cyrus S. Aiken, to whom the land was conveyed by David O. Warren on the 10th day of January, 1842, while he was the husband of Mildred Aiken. On the trial it was agreed:

"On, to wit, April 3, 1833, Cyrus S. Aiken and his wife, Mildred Aiken, were legally married in Alabama, and lived together as man and wife thereafter up to the time of his death on January 10, 1843, their residence and domicile being at all times during their married life in Alabama, and she, the said Mrs. Mildred Aiken, widow of Cyrus S. Aiken, continued after his death to live in Alabama up to the time of her death, which occurred on, to wit, July 7, 1843.

"Neither Cyrus S. Aiken nor his wife, Mildred Aiken, had any children.

"Cyrus S. Aiken died January 10, 1843; left neither father nor mother surviving him, and never had any brothers or sisters except the following, to wit: 'William Aiken, John G. Aiken, James L. G. Aiken, Jane Love Aiken,' all of whom survive Cyrus S. Aiken."

[1-3] The deed from Warren to Aiken recited a cash consideration on its face of $4,000, which the trial court found was actually paid therefor, and was the separate estate of Cyrus S. Aiken. Such finding made the land the separate property of Cyrus S. Aiken, and, under the laws of descent and distribution in force in this state at the time of his death, the land descended to his brothers and sisters, to the exclusion of his wife, but, as it was acquired during coverture, the presumption was it was community property and, on the death of Cyrus S. Aiken, descended to his wife, to the exclusion of his brothers and sister. Thus, under the laws of Texas in force at the time of the death of Cyrus S. Aiken, the actual legal title to the land descended to and vested in the brothers and sisters of Cyrus S. Aiken, to the ex-

clusion of his wife, but the apparent legal title descended to and vested in his wife, Mildred Aiken, to the exclusion of his brothers and sister. Sanborn v. Schuler, 86 Tex. 116, 23 S. W. 641.

Appellee acquired 78 per cent. of the apparent Mildred Aiken title to the land now in controversy. He also acquired an interest in the land through the heirs of the brothers and sister of Cyrus S. Aiken. One of the appellants, Houston Oil Company, also acquired an interest in the Mildred Aiken title to the land, but is not asserting that claim on this appeal. All of the appellants are claiming under the brothers and sister of Cyrus S. Aiken.

The trial was to the court without a jury and judgment was rendered for appellees for 78 per cent. of the land on the ground that they were innocent purchasers of that interest in the apparent Mildred Aiken title. The remaining 22 per cent. was divided among all the litigants in proportion to the interest held by them under the brothers and sister of Cyrus S. Aiken.

Appellants attack the finding on the issue of innocent purchaser in favor of appellees, on the ground that it is not supported by the evidence. On the issue of innocent purchaser, the facts are substantially as follows: (1) L. H. Marshburn, one of the appellees, and through whom the other appellees hold, testified:

"My name is L. H. Marshburn. Now, on or prior to November the 1st, 1918, prior to which time it is agreed that I got certain interests amounting to 78 per cent. of the title of the Mildred S. Aiken heirs, I did not have any knowledge of the law of Alabama such as pleaded here in regard to moneys, etc., belonging to the separate estate of the husband. Prior to that time I did not know of any facts that would make this land coming to Cyrus S. Aiken during his marriage to Mildren Aiken his separate property. I do not remember just the date when I first knew of any claim that, under the law of Alabama, or any state in fact, this property was the separate property of Cyrus S. Aiken, but it was not very long before Banks —John O. Banks—intervened in the suit down at Beaumont. (It was here agreed that it was about May 1st, 1919.) He came to me and said: 'I want to intervene in the suit. It was just a short time before the suit. I think I talked to Mr. Orgain about it about the same time. At the time I made purchases prior to November 1st, 1918, from Mrs. Aiken's heirs, I did have legal advice as to the title being in them. I had this advice from Mr. Gordon—well, I had advice before I ever consulted Mr. Gordon. When I first got into the case, just after this judgment, Mr. Johnson advised me— Judge Johnson, and also Judge Gordon, Mr. Shivers—I think I talked to him about it. I think that was all. I talked to Mr. Lee about it some. They told me the title was in the heirs of Aiken's wife, Mrs. Mildred Aiken. I acted on the advice of my attorneys and these other attorneys I talked to saying that Mrs. Aiken's heirs had title to the land. I paid these various sums of money recited in the deeds

from the parties for that title, believing I was getting a good title. I think it was in the fall of 1916 that I first acquired any of this land. At the time I bought my first interest in there, I do not think I had any abstract—I am almost sure I did not. I consulted Mr. Shivers and Mr. Thomas about what the record shows with reference to the powers of attorney claimed by some of the heirs of Cyrus S. Aiken, independent of Mildred Aiken. I asked him this: There were some powers of attorney, I understood they had some powers of attorney from the Aiken side. I wanted to know if they had any claim before I bought the Mildred Aiken side. They advised me they had no claim, so I bought the other title. I wanted to know whether they asserted any claim under the Aiken side. I went to those men because I knew there had been a claim asserted from that source, and as I wanted to know— because they were lawyers and I thought they could tell me—if they were still asserting claim from that side, and they said they were not. I understood that Shivers had power of attorney from the Aiken heirs—he said he did. I am very sure he told me he had powers of attorney. I don't know about those particular two—Norma Aiken and Alma Aiken—but from the Aiken side of the house, and I investigated their claim and saw that they had nothing. I am not sure that he said he was the attorney—or withdrew the suit or something."

(2) A suit was instituted in 1912, in the district court of Tyler county, by those claiming under the brothers and sister of Cyrus S. Aiken, seeking to recover the land from the Houston Oil Company. This suit was referred to by Marshburn in his testimony above quoted, and as to this suit the trial court made the following finding:

"I further find, as shown by the entries on the disposed of docket of the district court of Tyler county, Texas, that such docket of said court shows cause No. 3207, A. A. Aiken, William G. Aiken, Norma Aiken, Katie Aiken, John G. Aiken, Irma B. Aiken, Alma Aiken v. Houston Oil Company of Texas; the entries on such docket showing that said suit was filed in 1912, and was continued from time to time until on February 8th, 1915, the final entry on said docket is: '2/8/15. Dismissed on agreement, and costs charged against plaintiffs and case dismissed without prejudice against either plaintiffs or defendants.'"

(3) In 1913 the Houston Oil Company placed a tenant on this land, who remained continuously in possession thereof as tenant of the Houston Oil Company until after this suit was filed.

(4) Mrs. E. S. MacDougall and others, claiming under the heirs of Mildred Aiken, brought suit for the land in controversy against the Houston Oil Company, in the district court of Tyler county. Afterwards, one E. J. Conn intervened in that suit, claiming the land. The MacDougalls and the Houston Oil Company then pooled their interests, agreeing to hold it in common, each to have a one-half interest therein. On the 8th day of August, 1916, judgment was entered in

the district court in favor of E. J. Conn for an undivided $3/22$ interest in the land and to the Houston Oil Company and the MacDougalls for the remaining $19/22$. On appeal, the judgment in favor of E. J. Conn was reversed and rendered against him in favor of Houston Oil Company and the MacDougalls.

(5) The appellees afterwards acquired the MacDougall interest.

(6) It was agreed that the Houston Oil Company acquired a percentage of the true legal title before this suit was instituted, but it does not appear from the agreement or otherwise, when such title was acquired.

We believe this statement of the case sufficiently full to discuss the questions raised by this appeal on the issue of innocent purchaser.

[4] We have already determined that the true legal title descended to, and vested in, the brothers and sister of Cyrus S. Aiken, to the exclusion of his wife, but that the apparent legal title descended to, and vested in, his wife, to the exclusion of his brothers and sister. This apparent title descended to her heirs and a bona fide purchaser from them would be protected in his title. Sanborn v. Schuler, supra. But, as appellees were purchasing only the apparent legal title against the true legal title, the burden rested on them to show that they were innocent purchasers for value. They rested under the same burden imposed by law on a junior purchaser against a prior unrecorded deed. Sanborn v. Schuler, supra. To meet that burden, such a purchaser "must prove payment of the purchase money and absence of notice of the older conveyance." Roberts v. Pettus, 80 Tex. 425, 15 S. W. 1093. That is to say, appellees in this case were required to prove payment of the purchase money and absence of notice of the true legal title at the time they bought. No issue is made against the finding that appellees paid value for the land.

[5] But we do not believe that Marshburn, representing the appellees, discharged the burden of proving that he purchased without notice of the true legal title. The Houston Oil Company had a tenant in possession of this land when Marshburn bought. As a matter of law, this visited him with full legal notice of whatever title the Houston Oil Company was then claiming. Moore v. Chamberlain, 109 Tex. 67, 195 S. W. 1135; Houston Oil Co. v. Choate, 232 S. W. 285. The Houston Oil Company acquired an interest in the true title before the suit was filed. In the absence of any showing as to when that interest was acquired, the burden rested on appellees to show that they acquired the apparent title before the Houston Oil Company, which was in possession of the land by tenant, acquired the true title.

[6] Of course, if the Houston Oil Company owned a percentage of the true title, it was a tenant in common with the other owners of the true title, and its possession, through its tenant, was the possession of all of its tenants in common. Davidson v. Green, 27 Tex. Civ. App. 394, 65 S. W. 1111.

[7] But appellees advance the proposition that possession of the Houston Oil Company, through its tenant, should be referred to the holding in common with the MacDougalls, and sufficiently explains such holding, so that they were relieved of the burden of making further inquiry, and that such holding shifted the burden to appellants to show when the Houston Oil Company acquired the true title. We cannot agree with the proposition thus advanced. Possession of land by a tenant is notice to all the world of the actual title claimed by the landlord and all of the sources of title through which he claims. Such possession cannot be explained by an apparent title, though consistent with such possession. Moore v. Chamberlain, supra. Houston Oil Co. v. Choate, supra. If Marshburn referred the possession of the tenant to the claim of the Houston Oil Company, held by it in common with the MacDougalls, he did so at his peril, and against that possession he could recover only by showing that the Houston Oil Company did not own an interest in the true legal title at the time he purchased.

[8] From the statement made by us, it appears that Marshburn had actual notice of the claim to this land asserted by the true owners. Such notice, as a matter of law, visited him with knowledge of all the facts that an inquiry of the true owners would have disclosed. Bounds v. Little, 75 Tex. 320, 12 S. W. 1109. No inquiry was made of the attorneys who had represented the true owners as to the basis of their claim; Marshburn asked them for no facts. He wanted to know only whether or not they were asserting any claim to the land, under their powers of attorney from the heirs of the brothers and sister of Cyrus S. Aiken, and was informed that they had abandoned their claims. Possibly an inquiry as to the facts would have disclosed all the facts disclosed by the record. The burden rested on Marshburn to show that such an inquiry would not have given him the true facts. The attorneys may have abandoned their claims with the full knowledge of all the facts reflected by this record, believing that, under such facts, their clients had no title. Certainly, if the attorneys of whom Marshburn made inquiry had disclosed the facts to him, showing that the legal title was in their clients, even though they believed that their clients had no interest, and though they themselves had abandoned their claims to the land, it could not be insisted that Marshburn was an innocent purchaser, in face of the record of the old suit, showing that it was dismissed without prejudice to either party. And in this connection, we say further, that it is our judgment that the attorneys were not in position to bind the heirs by any statement made by them, and that Marshburn was under the

burden of showing that an inquiry directed to the heirs themselves would not have disclosed the facts as to the true title. Bounds v. Little, supra.

We accept as sound appellees' proposition on this point:

"Given the purchaser, under proper deed, who has paid valuable consideration, his bona fides is essentially a question of negligence vel non in accepting his title.. If he acquire apparently valid title without actual knowledge of defect, he is protected, unless circumstances put him upon inquiry. Then, unless reasonable inquiry would probably have informed him of the facts relied upon which would defeat his title, failure to make inquiry is excused. But if he make such proper inquiry as under all the circumstances one acting in good faith would make, and resulting from such inquiry the information obtained would satisfy a prudent man with the lights then before him, then he is protected as a bona fide purchaser, having fully discharged the burden which the duty of inquiry had put upon him. In such case the duty of inquiry is but a duty to exercise such ordinary care as the circumstances appear to call for and whether a given state of facts show proper discharge of said duty is not a question of law, but essentially and decidedly one of fact, and the finding of a jury or the trial judge thereon is equally conclusive with such finding on any other question of fact. Such is the law, as thoroughly established by Texas decisions," citing Bacon v. O'Connor, 25 Tex. 225–226; Bowles v. Belt (Tex. Civ. App.) 159 S. W. 888; Slayton v. Singleton, 72 Tex. 213, 9 S. W. 876; Pipkin v. Ware (Tex. Civ. App.) 175 S. W. 811.

But in meeting the burden imposed on the purchaser by this proposition, the law affirmatively says that he cannot discharge the duty owed by him to the true owners, when he knows that they are asserting a claim to the land, except by an inquiry directed to them or to some one with authority to represent them. No matter how diligent he may be in all other respects, no matter what information he may have from other sources, in the absence of inquiry of the claimant himself, or of one with authority to speak for him, he is visited with knowledge of all the facts that such an inquiry would have disclosed. Bounds v. Little, 75 Tex. 320; Houston Oil Co. v. Wilhelm, 182 Fed. 474, 104 C. C. A. 618. The burden rested on Marshburn to show that an inquiry would not have given him notice of the facts that made the brothers and sister of Cyrus S. Aiken his heirs, to the exclusion of his wife. They had prosecuted their claim for three years and then dismissed their suit without prejudice to their claim. No presumption arose in appellees' favor from this fact. Hence we conclude that the court's finding, that an inquiry of the heirs would not have revealed their title, is not supported by the evidence.

When he bought the land in controversy, Marshburn knew that Cyrus S. Aiken was a married man and a citizen of Alabama at the time he (Aiken) purchased it from Warren. He was put on notice of the fact by recitals in the deed that the consideration for the land was a cash consideration. Appellants advance the proposition that appellees, by force of this information, were visited with knowledge of the laws of Alabama relating to the ownership of the $4,000 consideration paid for the land and took their title with the presumption against them that it was the separate property of Cyrus S. Aiken, and, on his death, descended to his brothers and sister, to the exclusion of his wife. We do not agree with this proposition. Appellees were dealing with Texas property. In the absence of knowledge to the contrary, they could deal with it on the presumption that the laws of Alabama were the same as the laws of Texas. Of course, this presumption is one of fact and not of law, and was subject to be rebutted by pleadings and proof. Appellants did rebut it, and showed that the cash consideration was the separate estate of Cyrus S. Aiken, though, under the laws of Texas, presumed to be community property. But, if Marshburn had no knowledge of the true ownership of the consideration, and knowledge of the fact that Cyrus S. Aiken was a citizen of Alabama at the time he bought the land did not put him on inquiry as to the ownership of the consideration, he had the right to deal with it as community property.

We conclude that the findings on the issue of innocent purchaser in favor of appellees are not supported by the evidence. Therefore, the judgment of the trial court is in all things reversed, and this cause remanded for a new trial.

### On Motion for Rehearing.

Section 4 of the Act of January 20, 1840, regulating marital rights, is as follows:

"Be it further enacted, that all property which the husband or wife may bring into the marriage except land and slaves and the wife's paraphernalia and all the property acquired during the marriage, except such land or slaves, or their increase, as may be acquired by either party, by gift, devise, or descent, and except also the wife's paraphernalia, acquired as aforesaid, and during the time aforesaid, shall be the common property of the husband and wife, and during the coverture may be sold or otherwise disposed of by the husband only; it shall be first liable for all the debts contracted by the husband during the marriage, and for debts contracted by the wife for necessaries during the same time; and upon the dissolution of the marriage, by death, after the payment of all such debts, the remainder of such common property shall go to the survivor, if the deceased have no descendant or descendants; but if the deceased have a descendant or descendants, the survivor shall have one half of such common property, and the other half shall pass to the descendant or descendants of the deceased." Section 4, p. 178, vol. 2, Gammel's Laws.

In 1848, this act was amended to read as follows:

"Be it further enacted, that all property, both real and personal, of the husband, owned or claimed by him before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands or slaves thus acquired, shall be his separate property. All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands or slaves thus acquired, shall be the separate property of the wife: Provided, that during the marriage, the husband shall have the sole management of all such property.

"Be it further enacted, that all property acquired by either husband or wife, during the marriage, except that which is acquired in the manner specified in the second section of this act, shall be deemed the common property of the husband and wife, and during the coverture may be disposed of by the husband only; it shall be liable for the debts of the husband, and for the debts of the wife, contracted during the marriage, for necessaries; and upon the dissolution of the marriage, by death, the remainder of such common property shall go to the survivor, if the deceased have no child or children; but if the deceased have a child or children, the survivor shall be entitled to one-half of said property, and the other half shall pass to the child or children of the deceased." Sections 2, 3, pp. 77, 78, vol. 3, Gammel's Laws.

The title to the land in controversy is controlled by the act of 1840, and as a proper construction of that act, appellees advance the following propositions:

"Under the law in force at the death of Cyrus S. Aiken, the land in question descended to his wife as a community property, without regard to the character of the original consideration paid by Aiken to Warren. And the legal title not only apparently but in fact vested in Mildred Aiken. Under the law of 1840, regulating marital rights, all the property acquired during marriage passed, upon the dissolution of marriage by death, to the survivor, if the deceased left no descendant or descendants. Therefore, the legal title to the property in controversy passed to Mildred Aiken, upon the death of her husband, Cyrus S. Aiken."

Their position is well stated in the following excerpts from their written argument:

"This court is composed of 'officers of the government,' and, like appellees, who were 'people dealing with such matters,' must necessarily, in determining the question of heirship of the property acquired during the marriage of Cyrus S. Aiken and his wife, Mildred Aiken, follow the statute which designated who, at the death of Cyrus S. Aiken, would inherit that kind of property, to wit: Land acquired during his marriage. And, if the Supreme Court of Texas knew the law, and if Justice Williams was capable of stating what they determined to be the law, then the members of this court, as 'officers of the government,' and appellees, 'dealing with the title to land situated here, were required to take notice of no other laws,' but, in determining where the title to the land

here involved, acquired during the marriage of Cyrus S. Aiken and Mildred Aiken, went upon the dissolution of such marriage by the death of Cyrus S. Aiken, this court must be controlled by the statute above quoted, just as appellees had a right to absolutely rely thereon.

"Every condition necessary to fulfill and literally satisfy every call in the description of this land, as the property designated in such statute is admitted, and by such statute the Congress of Texas said, as effectually as if they had said it in these express words: 'The land acquired from David O. Warren by Cyrus S. Aiken, during his marriage to Mildred Aiken, not having been acquired by him either by gift, devise, or descent, shall go to the survivor of such marriage, to wit, Mildred Aiken, upon the death of Cyrus S. Aiken, since the deceased, Cyrus S. Aiken, has left no descendant or descendants.'

"This is, without any possible question or room for quibbling, the very letter of such statute, the act of Congress of January 20, 1840. It expressly applied to this property, and, as said by Justice Brown, quoting the language of Chief Justice Stayton in regard to Legislative Acts: 'Whatever may seem to be its omissions, courts cannot, on such consideration, by construction restrain its operation.'

"And this law operated to vest the title to this property, acquired during marriage, in Mildred Aiken, and, if a title, vested by the express terms of a legislative enactment, is not a legal title, there is no meaning in words. A title conferred by the express terms of a statute is a title 'provided for by statute,' is it not? Such a statute is operative on the title to property, where the characteristics of such property fulfill its every requirement, to confer a right which 'may be enforced in a court of law,' is it not?

"Our Supreme Court in Patty v. Middleton, 82 Tex. 593, 17 S. W. 911, said: 'Such a title is a legal title because it is such evidence of right as may be enforced in a court of law, and this is so because it is the evidence of ownership required by law and provided for by statute.'

"Therefore, if the law, embodied in the statute of 1840, said the title to the very property involved should go to Mildred Aiken, as the survivor of the marriage with her husband, Cyrus S. Aiken, then the title, vested by law, is a legal title, is it not? If not, why not?

"Ownership of the purchase money which pays for land can, per se, give rise to nothing but a resulting trust, which is founded in equity, and is only an equitable title. It is not 'such evidence of right as may be enforced in a court of law,' but only in a court of equity (except under our statute which expressly recognizes equitable title as such). 'This is so because it is [not] the evidence of ownership required by law and [or] provided for by statute where lands are to be conveyed.' Patty v. Middleton, supra.

"If the separate money of Cyrus S. Aiken paid for this land, the right arising by reason of that extraneous fact—the equitable title—the resulting trusts so arising—might pass, under the general statute of descent and distribution, to his collateral kindred, as heirs to such a right. But the legal title to this land passed to his wife, who was specifically designated to be his heir as to this land, acquired

during their marriage, by the express terms of the statute specially dealing with property acquired during marriage, which statute alone provided how, and to whom, such property should pass 'upon the dissolution of marriage by death.' Can this conclusion be avoided? If so, how?"

[9] We do not concur with appellees in their construction of the act of 1840. The conveyance to Cyrus S. Aiken vested in him the legal title to the land in controversy. This was clearly held by the Supreme Court in Hill v. Moore, 62 Tex. 610. And, in Stiles v. Japhet, 84 Tex. 91, 19 S. W. 450, discussing a title acquired under the act of 1840, it was said:

"We concede that, under the more recent decisions of the Supreme Court, this conveyance did have the effect of conferring what is technically termed the legal title as contradistinguished from the equitable, upon Mrs. Stiles"—citing Patty v. Middleton, 82 Tex. 586, 17 S. W. 909; Edwards v. Brown, 68 Tex. 329, 4 S. W. 380, 5 S. W. 87; Hill v. Moore, 62 Tex. 610.

[10] In buying the land, as Aiken paid for it with his separate estate, appellees concede in their argument, which we have above quoted, that he, in fact, acquired the equitable title. It follows then, under the facts of this case, that the deed to Aiken vested in him both the legal and equitable title. But as appears from appellees' propositions, quoted above, they strenuously contend under the act of 1840—

"that the legal title to the property in controversy passed to Mildred Aikin upon the death of her husband, Cyrus S. Aikin."

The original act uses the words, "acquired by either party,"² referring to husband and wife, and the amendment uses the words "acquired by either husband or wife." Both acts excluded from their provisions all property acquired "by gift, devise, or descent." Because the land in question was not acquired by "gift, devise, or descent," they argue that it came within the terms of the act, and, therefore, descended to the wife. Their argument is:

"Every condition necessary to fulfill and literally satisfy every call in the description of this land, as the property designated in such statute is admitted, and by such statute the Congress of Texas said, as effectually as if they had said it in these express words: The land acquired from David O. Warren by Cyrus S. Aiken during his marriage to Mildred Aiken, not having been acquired by him either by gift, devise, or descent, shall go to the survivor of such marriage, to wit: Mildred Aiken, upon the death of Cyrus S. Aiken, since the deceased, Cyrus S. Aiken, has left no descendant or descendants."

Appellees have not correctly construed the act of 1840 on this point.

In Edwards v. Brown, supra, the Supreme Court fully and correctly defined the meaning of the word "acquired," and described and named—not the property that was excluded by the act—but all the property that was included in its terms, saying:

"The rule of decision laid down in the cases cited and universally adopted in our state is inconsistent with the idea that the words 'acquired by either husband or wife,' are to be construed as having the same meaning as the words 'conveyed to either husband or wife.' It seems to us, therefore, that, in framing this statute, the Legislature had in view the consideration by which the property should be acquired, and did not intend to provide that a conveyance made either to the husband or wife singly during marriage shall pass the legal title of the estate to both. * * *

"We conclude that the object of our lawmakers, in enacting the statute we have had under consideration, was to provide that all property acquired during the marriage by the labor of either husband or wife or the joint labor of both, as well as the increase and proceeds of such property, should belong beneficially to both, although the legal title should be conveyed to one only; and that they did not mean that the legal title should be in both the husband and wife, when the property was not conveyed to both in accordance with the provisions of our statute regulating conveyances."

Therefore, as this land was not acquired by the labor of either Cyrus S. Aiken or his wife, or the joint labor of both, and was not the increase and proceeds of property so acquired, it was not included within the terms of the act, and was not covered by its provisions as to descent and distribution, but was the separate property of Cyrus S. Aiken, and descended under the provisions of the act approved January 28, 1840. entitled "An act to regulate the descent and distribution of intestates' estates." 2 Gammel's Laws, p. 306.

Cyrus S. Aiken died on the 10th day of January, 1843, intestate, leaving neither father nor mother nor children. His separate estate, including the property in controversy, descended, under section 5 of the above-cited act, reading as follows:

"If there be neither father or mother, then the whole of such estate shall pass to the brothers and sisters of the intestate, and to their descendants, or to such of them as there be."

Now, as the statutes of descent and distribution are as "effective to convey the legal title as is a deed" (Sanborn v Schuler, 86 Tex. 116, 23 S. W. 641), it follows that the legal and equitable title to the land in controversy descended to the brothers and sister of Cyrus S. Aiken, as fully and completely as if he had conveyed it to them by regular deed during his life. As it was his separate property, and as the deed to him vested in him both the legal and equitable title, if Judge Stayton was correct in the proposition we have just quoted, neither the legal nor equitable title descended to the wife, and she inherited no interest in the land, benefi-

cial or otherwise. But, as the land was conveyed to Cyrus S. Aiken during coverture, and there was nothing in the deed of conveyance to indicate its separate character, presumptively, it was community property, and on his death Mrs. Aiken was invested with the apparent legal and equitable title, that is the apparent beneficial interest in the land. Sanborn v. Schuler, supra.

When Marshburn bought the wife's apparent title, if he was ignorant of the fact that the land was the separate property of the husband, he must be protected in his title. Stiles v. Japhet, supra. But he bought nothing. His deed conveyed him no title—not even the naked legal title. Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S. W. 1139. He can recover only by resorting to equity. And equity can give him the title only on an affirmative showing that he was a bona fide purchaser for value, without notice of the claim now asserted by appellants. As we said in our original opinion the burden rested on him to show the necessary facts to make his title. Shall the legal title, descending under the act of January 28, 1840, be inferior in probative force to the apparent title descending under the act of January 20, 1840? Shall the substance, that is the true legal title, be of less dignity than the shadow, that is the apparent legal title?

Appellants attack our conclusion that:

"They rested under the same burden imposed by law on a junior purchaser against a prior unrecorded deed."

They say our citation of Sanborn v. Schuler does not support that proposition. We think it does. In that case, discussing a title on all fours with the title we are discussing, Judge Stayton said:

"In so far as the right of the bona fide purchaser to protection is concerned, the operation of the statute of descent and distribution on the apparent title was to pass that to Mrs. Deal, as fully as would a conveyance by one having the apparent superior right pass that apparent right even to a purchaser with notice of the superior right of some third person; so that she, as well as a person holding apparent title by deed, could make a conveyance to a bona fide purchaser that would be protected against an unknown but superior right to that held by the vendor."

When making his illustration, Judge Stayton must have had reference to a junior purchaser against a prior unrecorded deed.

Again, in Edwards v. Brown, Judge Gaines recognized the principle we are contending for and illustrated it by the case of a junior purchaser against a prior unrecorded deed. He said:

"But it may be further remarked that it does not follow that, because one may have the legal title, another may not acquire a superior equity as a bona fide purchaser. The holder of the legal estate by an unrecorded deed cannot prevail over a purchaser from his grantor, who has paid value without notice of the unrecorded conveyance."

Judge Head announced the same proposition in Barnes v. McArthur, 4 Tex. Civ. App. 71, 22 S. W. 770:

"Appellant contends that, notwithstanding the land may have been the separate property of Mrs. McBride, yet, inasmuch as all property acquired by purchase during marriage is presumed to be community property, whether the deed be taken in the name of the husband or wife, he should be protected, as an innocent purchaser, by reason of his deed from the husband; but, as will be seen from the conclusions of fact, there is no evidence in the record to show that appellant paid a valuable consideration, and we think this necessary in order to enable him to acquire Mrs. McBride's land under a deed from her husband alone. McBride v. Banguss, 65 Tex. 174; Parker v. Coop, 60 Tex. 111; McKamey v. Thorp, 61 Tex. 648; Stoker v. Bailey, 62 Tex. 299; Kirby v. Moody, 84 Tex. 201, 19 S. W. 453. We find no error in the judgment rendered by the court below, and it is therefore, in all things, affirmed."

While the point was not necessary for the decision of the case, in Railway Co. v. Durrett, 57 Tex. 53, Judge Stayton recognized the same proposition:

"It is urged that, as the deed was made to Mrs. Durrett during coverture, the deed from the husband, in the absence of notice to the appellant that the land was the separate property of the wife, must be effective. The pleadings of the appellant were not such to raise the question whether it was a purchaser for a valuable consideration without notice of the right of Mrs. Durrett; and the court did not err in sustaining the exception to the fourth paragraph of the answer." See also Burnham v. Hardy Oil Company, supra, 108 Texas, last paragraph, page 563."

Our conclusions on the other propositions raised by appellees are fully reflected in the original opinion.

Appellees have called our attention to the fact that we reversed this case as to all the league, while only a part of it is involved in this appeal, the balance being conceded to them. They are right in this contention. We, therefore, limit the reversal of this case to that percentage of the league claimed by appellants.

We cannot close this opinion without expressing to counsel for both parties our deep appreciation of the careful and able manner in which the motion for rehearing has been prepared and argued. We have given these arguments our most painstaking consideration, and each member of this court has carefully reviewed the original opinion, and, to the best of our ability, analyzed the additional authorities cited on rehearing.

We are unanimously of the opinion that the motion for rehearing should be overruled, except as herein indicated, and it is so ordered.