## PEAVY v. SMITH. (No. 912.)*

(Court of Civil Appeals of Texas. Beaumont. March 8, 1923. On Rehearing March 28, 1923.)

1. **Appeal and error ⬡⟹655(1)—Certified copy of appeal bond stricken from record on appeal.**

Where judgment in a suit to determine interests in land was entered June 16, and an appeal bond was filed by interveners the 13th of the following February, a certified copy of such bond, filed in the appellate court will be stricken from the record.

2. **Husband and wife ⬡⟹254, 274(1)—Deed to wife held to vest legal title in her; purchaser of true legal title devised by wife as separate property unaffected by purchase of community title as apparent title.**

Where land was conveyed to a married woman and was in fact her separate property, the deed vested in her the legal title to the property, although the apparent title was in the community estate, and where the purchaser from her devisee ascertained the true title and paid full consideration therefor, his title was superior to that of purchaser of a claim under children, inheritors of the community estate, as being the purchaser of an apparent title without notice.

Appeal from District Court, Jasper County; V. H. Stark, Judge.

Action by Garland Smith individually and as trustee against A. J. Peavy, trustee, and others. From judgment for plaintiff, defendants appeal. Reversed, and rendered for defendants.

Sleeper, Boynton & Kendall, of Waco, A. M. Huffman, of Beaumont, and W. P. Neblett, of Houston, for appellants.

Smith & Lanier, of Jasper, for appellee.

WALKER, J. [1] This was a suit by appellee, Garland Smith, individually and as trustee for H. O. Howell and Lewis Lanier, to recover of appellants, Wm. Cameron & Co. and A. J. Peavy, trustee, an undivided one-twentieth interest in the western half of the William Jones league in Jasper county, Tex. Other parties intervened, and an adverse judgment was rendered against them on certain other portions of the league, but, as they did not perfect an appeal from such judgment, it is not necessary to state their interest nor to name the parties so involved. However, we will say that such interveners duly excepted to the judgment entered and gave notice of appeal, but did not perfect their appeal by filing bond within the time allowed by law, but have filed briefs here. Judgment was entered in this case on the 16th day of June, 1922, and their bond was not filed until subsequent to the 13th day of February, 1923. On the 14th day of this month, they filed in this court a certified copy of such bond. Of course, it has no place in this record, and is therefore stricken out.

The trial was a jury on special issues, and on their answers judgment was entered in favor of appellees for the one-twentieth interest sued for.

This appeal presents the following facts: It is conceded that the appellants own an undivided one-half interest in the western half of the Jones league; also their title to nine-tenths of the other one-half undivided interest is not questioned. Appellees claimed and recovered an undivided one-tenth interest in the western half. The following is the history of the title to that interest: The undivided one-half interest in question was deeded to Samuel Henderson on the 17th day of December, 1868, by Abel Adams and R. C. Doon. On the 24th day of January, 1874, Samuel Henderson conveyed it to Charles E. Fenner. On the 27th day of March, 1890, Fenner conveyed it to "Fannie Hardeman Henderson, her heirs and assigns" on a valuable consideration, describing her as "Mrs. Fannie Hardeman Henderson, wife of Sam Henderson, Esq." The Sam Henderson named in this deed was the grantor to Fenner. There was no recitation in the deed to Samuel Henderson, nor in the deed from Fenner to Mrs. Henderson making the land the separate property of the grantee. That is to say, there was nothing contained in either deed to affect the presumption that the land was the community property of Mr. and Mrs. Henderson. Samuel Henderson died in 1891. Mrs. Fannie Hardeman Henderson died testate subsequent to the 31st day of October, 1902, and her will was duly probated on the 11th day of January, 1904, under the terms of which she devised to her daughter, Carrie Payne Henderson, "all land that I may own or be entitled to in the state of Texas at the time of my death." It is conceded by appellees that Mrs. Fannie Hardeman Henderson had not parted with any of her title, acquired under the deed to her from Fenner, at the time of her death, and that this title, under her will, passed to her daughter, Miss Carrie Payne Henderson. It is further conceded, and the jury so found, that this land was, in fact, the separate property of Mrs. Fannie Hardeman Henderson, and that the community estate of herself and her husband, Samuel Henderson, had no interest therein, and that the true title to this land, both legal and equitable, passed to Miss Carrie Payne Henderson under the terms of her mother's will. On the 12th day of April, 1904, Miss Carrie Payne Henderson, by her general warranty deed of that date, on a valuable consideration, conveyed to John T. Beaty by metes and bounds an undivided one-half interest in the western half of the Jones league. In purchasing this land Beaty in-

quired into the facts .of Miss Henderson's title, and before purchasing was furnished the following affidavit, which was recorded in the deed records of Jasper county in connection with his deed, but not as a part thereof:

"The State of Louisiana, Parish of Orleans.

"Before me, the undersigned authority, on this day personally appeared Charles E. Fenner and Sam Henderson, Jr., who, being by me first duly sworn, upon ' oath depose and say, each and severally, that the tract of land containing 1,094 acres, part of the William Jones League, situated in Jasper county, Texas, which was willed by Mrs. Fannie Henderson, deceased, to her daughter, Miss Carrie Payne Henderson, was the separate property of the said Fannie Henderson, deceased, and was not community estate between the said Fannie Henderson and her husband. ·

　　　　　　　　　'"Charles E. Fenner.
"Witness:　　　　Sam Henderson, Jr.
　"J. S. Waterman,
　"Harry P. Nall.

"Sworn to and subscribed before me, the undersigned authority, on this the 9th day of July, A. D. 1904.
　"[L. S.]　　Obvaham Holdberg, Not. Pub.

"Filed for record the 5th day of Sept.; 1904, at 11 o'clock p. m. Recorded the same day at 3 p. m.
　"H. A. Pace, C. C. C. J. C.,
　　　　　"By Winnie Christian, Deputy.
· "Book 4, page 290."

In good faith, on a valuable consideration, and in due course of trade, Beaty's title passed to the Texas Lumber Company on the 29th day of April, 1904, and from the Texas Lumber Company to appellant Wm. Cameron & Co. on the 10th day of March, 1906. Appellant Peavy, trustee, claims the timber on the land under a deed to him from Wm. Cameron & Co. The parties agreed that the taxes had been paid on the land in controversy each year from 1881 to the date of the trial "as they were assessed against it by the state and county and before its delinquency."

Appellants also answered by the statutes of limitation of 3, 5, and 10 years, and all the issues involved under those pleas were found in favor of appellants.

The evidence raised the issue that appellants and those under whom they hold were in continuous possession of the land by tenant from about 1904, holding about 1,400 acres of the land under fence continuously during all this time. Appellees did not know of the existence of the affidavit above given, but on their own testimony they knew of the deed from Miss Carrie Payne Henderson to J. T. Beaty, and had seen it of record. They knew of the claim asserted by appellants under this deed, and of the long-continued occupancy of the land and of the claim of appellants under such occupancy, and during the years while it was being so occupied, they had been on the land and had seen the wire fence. Before acquiring their interest

in this land, Garland Smith visited Miss Carrie Payne Henderson in Mississippi, and asked her whether the land was conveyed to her mother as her separate property, to which inquiry Miss Henderson replied that she did not know. She said:

"I don't know a thing in the world about it. My brother Sam attended · to all my business, and I don't know a thing in the world about it."

After receiving this information from Miss Henderson, appellees purchased a claim under other children of Sam Henderson, amounting to an undivided one-tenth interest in the land conveyed to Mrs. Henderson. At the time the appellees purchased this interest, they knew of the claim of appellants, of their possession, and of their chain of title. Also they knew John T. Beaty, the purchaser from Miss Carrie Payne Henderson, and had lived in the same town with him for many years. It seems to be conceded in the record that appellees' grantors were minors when appellants and those under whom they hold entered into possession of the land in controversy, and that this suit was filed within less than three years after they reached their majority. The jury found that at the time appellees acquired the interest asserted in this suit, neither of them had "any knowledge that the deed from Charles E. Fenner to Fannie Hardeman Henderson conveyed the land therein described to the separate estate of Fannie Hardeman Henderson." The jury also found that they had no knowledge of the affidavit above given.

## Opinion.

[2] Under the law of this state the deed · to Mrs. Henderson vested in her the legal title to the land in controversy, though the apparent title was in the community estate. On the facts of this case, it is conceded that the true title, that is both the legal and equitable title, was in Mrs. Henderson, and the community had no interest therein. No presumption of innocent purchaser arises in favor of J. T. Beaty, nor of those holding under him, because as a matter of law they were visited with notice of the fact by the recitations in her deed that Mrs. Henderson was a married woman at the time she acquired the land. The presumption that it was community property put the burden on Beaty of investigating and inquiring as to the true title, and of discovering the heirs of Samuel Henderson and of ascertaining their interest in the land. In other words, he was required to ascertain the true facts as to the title, and to purchase from Miss Carrie Payne Henderson at his peril. But that was the full measure of the burden resting on him. He, in fact, purchased the true title and placed his deed of record, paying full value therefor. His vendees went into possession under that deed and have remained

continuously in possession, asserting an adverse claim for more than fourteen years, rendering the land for taxes, and paying the taxes each and every year before delinquency. Appellees purchased with knowledge of every fact in appellants' title, except that it was the separate property of Mrs. Henderson. Appellants' general warranty deed for all the land in controversy advised appellees of the extent of their claim. Appellants' actual and notorious possession also advised appellees of the extent of their claim. Appellees do not insist that their deed conveyed them any interest in the land. but rest their claim entirely on the proposition that they were innocent purchasers of an apparent title. We do not know of any proposition of law, on the facts of this case, that would sustain their contention. It seems to us that it would be a strange doctrine that would permit the purchaser of an apparent title to prevail over a senior purchaser of the true title, who was in actual possession under his recorded deed, exercising notorious dominion over the premises.

The trial court should have granted appellants' motion for an instructed verdict. We here reverse the judgment of the trial court and enter judgment in favor of appellants for all the land in controversy between them and appellees. The principles announced in Patty v. Middleton, 82 Tex. 586, 17 S. W. 909; Loomis v. Cobb (Tex. Civ. App.) 159 S. W. 305; and Stewart v. Marshburn (Tex. Civ. App.) 240 S. W. 331; fully sustain us in the conclusions above announced.

It follows from what we have said above that the interest of interveners is not before us, and our judgment can in no way affect their interest.

Reversed and rendered.

### On Rehearing.

Our order, entered at a former day of this term, reversing and rendering judgment in favor of appellants "for all the land in controversy between them and appellees," is reformed so as to include only the 2,245-acre tract designated in the record as tract No. 1. Appellants showed no interest in tracts Nos. 2 and 3.

The judgment of the trial court in favor of appellees for tracts 2 and 3 is therefore affirmed.