W. D. SLAYTON v. E. S. SINGLETON ET AL.

No. 2505.

1. **Presumption—Heirs—Wills.**—The law presumes that a person proved to be dead left an heir or heirs. No such presumption obtains as to the existence of a will.

2. **Foreign Probate Proceedings.**—It is well recognized that a will though probated elsewhere is not admissible in evidence in the courts of this State until probated within the State.

3. **Same—Notice.**—Such foreign probate proceedings are not chargeable as notice upon the purchaser of lands affected thereby within the State.

4. **Notice—Inquiry.**—A purchaser is chargeable with notice of what he might have known upon reasonable inquiry suggested by his actual knowledge. But where

negligence or carefulness of investigation or inquiry would have reached a like failure no presumption should follow from the presence or absence of either.

5. **Same—Bona Fide Purchaser.**—The probate of a will in Tennessee will not affect a bona fide purchaser of land affected by such will made in Texas from an heir and before the will was probated in Texas.

6. **Registration of Foreign Probate Proceedings.**—See statutes on subject collated.

APPEAL from Wichita. Tried below before Hon. J. M. O'Neill, Special District Judge.

The facts are given in the opinion.

*L. C. Barrett*, for appellant.—A bona fide purchaser from an heir for value without notice takes title as against a devisee in an unprobated and unrecorded will of the ancestor. Ryan v. T. & P. R. R. Co., 64 Texas, 242; March v. Huyter, 50 Texas, 243; Holmes v. Johns, 56 Texas, 52; Wade on Notice, secs. 108, 217, 218, 221, 222.

*Robert E. Huff*, for appellees.—The laws of descent and distribution do not apply except when the owner of property dies intestate and all purchasers of property of a decedent are put on inquiry as to the existence of a will. A purchaser from one who, in the absence of a will, might otherwise have been an heir is not an innocent purchaser if he buys without any inquiry whatever, but he is chargeable with notice of all such facts as if he had used ordinary diligence he could readily have ascertained. The good faith of a purchaser can not invest him with the title to property if the vendor has no title. Rev. Stats., art. 1645; Dodd v. Arnold, 28 Texas, 97; Littleton v. Giddings, 47 Texas, 109; Cambridge Valley Bank v. Delano et al., 48 N. Y., 326; Wade on Notice, secs. 11–17.

WALKER, ASSOCIATE JUSTICE. — Slayton appeals from a judgment and decree in which he is allowed in partition one-eighth interest in certain lands when he insists he was entitled to one-fourth interest.

The lands were granted in right of heirs of R. J. Scott, a soldier who fell at Goliad in 1836, unmarried, without issue, and intestate. His parents, John and Sarah Scott, resided in Tennessee and were his heirs.

Sarah Scott died in 1842, leaving four children. The father, John Scott, died in Tennessee in 1865, the four children surviving.

It appears in the record that John Scott left a will, which in 1865 was probated in Tennessee (in what county is not shown), by which his interest in these and other Texas lands to the extent of one-fourth was devised to the children of Mary Yell Cannon, who, it seems, would have inherited one-fourth had he died intestate.

This will with its probate was duly recorded in the several counties in

Texas where the lands were situated in 1887, and it seems under the Act Twentieth Legislature of March 23, 1887. Sayles's Civ. Stats., art. 548*a.*

July 27, 1883, Mary Yell Cannon conveyed by warranty deed her undivided one-fourth interest in two of the tracts of land, and June 27, 1884, a like interest in the other tract in controversy to W. G. Estis, who conveyed the land to J. G. Estis, who conveyed same to E. F. Ikard by deed with general warranty. Appellant holds by deed from Ikard of date August 6, 1887, prior to the registry of the will of John Scott in Texas.

Ikard, the grantor of appellant, testified that "he paid the purchase money in cash at the time he got the deeds from Estis; that he got the deeds in October, 1885; that he did not investigate the title to the land; but he asked W. G. Estis (who as attorney in fact for J. G. Estis sold witness the land) if the title was good, and said W. G. Estis told him it was good; that witness believed it and thought he was getting a good title to it; that he did not know of the will of John Scott when he bought the land and paid for it and took said deed."

On cross-examination Ikard stated "that he knew the land was patented to the heirs of Robert J. Scott; that he just took Estis's word that the title to said land was good and made no examination of the records and made no inquiry as to who the heirs of R. J. Scott were." On reexamination he stated "that he had bought land from Estis several times before this, and up to the time he bought this land the title to all the lands he had bought from him had been good and had not failed, and he had found all right was the reason he had taken Estis's word."

The conveyance by Mary Yell Cannon was recognized as to her one-fourth interest in her mother's estate. The court, however, held that the will of John Scott passed to her children the one-fourth interest in his estate to which she would have been an heir had there been no will.

The appellant claims to hold under Ikard a bona fide purchase without notice of the will. There is no controversy as to the facts that Ikard bought and paid for the one-fourth interest from Mary Yell Cannon, and that she was an heir to one-fourth, or was one of four persons heirs at law of John Scott, and that at the time of Ikard's purchase and payment he had no knowledge of the existence of the will, and that not until two years later was the will and its probate duly recorded in Texas.

The deed from Mrs. Cannon to W. G. Estis in terms conveyed her one-fourth interest in the lands. She was the legal and equitable owner of one-eighth interest and the apparent owner of one-fourth interest. We are required to ascertain what effect if any the will and its probate in Tennessee had upon the bona fide purchaser from the heir.

Under our statutes, as at common law, the lands of a deceased pass to his heirs. Rev. Stats., art. 1645. Under our statutes the estate vests in the devisees of a will if such will exists. The law presumes that a

person proved to be dead left an heir or heirs. Lawson on Pres. Ev,, 198. No such presumption obtains as to the existence of a will. A devisee must establish his right through the will. But an heir is not required before taking as heir to prove that the deceased was intestate. The law casts the estate upon proof of the facts which make the heirship. It has therefore been held in our courts as elsewhere that a purchaser from an heir is not precluded from availing himself of the protection which our registration laws accord to innocent purchasers when such purchase is asserted against an unregistered deed from the intestate. 56 Texas, 52, Holmes v. Johns; 47 Texas, 454, Taylor v. Harrison. And the same rule has been assented to as against an unregistered will. 50 Texas, 243, Marsh v. Huyter; 64 Texas, 242, Ryan v. T. & P. R. R. Co.

It is well recognized that a will only probated elsewhere than in the State is not admissible in the courts of the State as evidence affecting the title to lands the subject of such will. 27 Texas, 38, Holman v. Hopkins; 48 Texas, 147, Paschal v. Acklin; 60 Texas, 355, Mills v. Herndon; 16 Texas, 598, Howze v. Howze; 27 Texas, 192, Paschal v. Acklin.

The Probate Act of 1848 (Pas. Dig., 1265), re-enacted in Revised Statutes, article 1856, provided: "When application is made for the probate of a will which has been probated according to the laws of any of the United States, * * * a copy of such will and the probate thereof attested by the clerk of the court in which such will was admitted to probate and the seal of the court annexed, etc., may be filed and recorded in the court, and shall have the same force and effect as the original will if probated in said court; provided," etc.

Article 4876, Revised Statutes: "Every such will, together with the probate thereof, shall be recorded by the clerk of the County Court in a book to be kept for that purpose, and certified copies of such will and the probate of the same or of the record thereof may be recorded in other counties and may be used in evidence as the original might be."

Act of March 23, 1887 (20 Leg.). Section 1: "When any will or testament or testamentary instrument of any character conveying or in any manner disposing of land in this State has been duly probated according to the laws of any of the United States or Territories, a copy thereof and its probate attested by the clerk of the court in which such will and testament or testamentary instrument was admitted to probate * * * may be filed and recorded in the register of deeds in the same manner as deeds and conveyances are required to be recorded and without further proof or authentication." Section 3: "Every such will and testament or testamentary instrument and its probate which shall be attested and proved as provided in section 1 of this Act and delivered to the clerk of the proper court to be recorded shall take effect and be valid and effectual as a deed of conveyance of said property, and the record thereof

shall have the same force and effect as the record of deeds or other conveyances to land from the time when such instrument was delivered to such clerk to be recorded, and from that time only." Section 4: "The record of such will and testament or testamentary instrument and its probate, duly attested and proved as provided in the preceding sections of this act, and duly made in the proper county, shall be taken and held as notice to all persons of the existence of such will and testament and of the title or titles conferred thereby."

From these citations from the statutes it appears that the probate of the will of John Scott at any time since his death could have been certified and the will and its probate recognized in this State. Since the enactment of the Revised Statutes the will and probate, or copy of same, could have been duly recorded in any of the counties where the lands devised are situated. And from the time the Act of March 23d, 1887, went into effect such record became as necessary as the record of deeds and other instruments relating to lands.

This late Act of the Legislature places wills upon a like plane with deeds between parties, and it does not appear why, in the absence of the statute, the will though duly probated could or should have more sacredness as a means of passing the title than a deed duly acknowledged or proved could have for the same property and between the same parties.

Inasmuch as the foreign probate of a will gives no validity to such will until certified to and registered in some county within the State, we may conclude that such foreign probate proceedings are not chargeable as notice upon the purchaser of lands affected thereby within the State until after such registration, and by the Act of March 23, 1887, in the county where the land is situated. We hold therefore that the probate of the will in Tennessee in 1865 was not notice of the contents of it to the parties in Texas dealing together in selling and buying the Texas lands.

In two of the deeds from Mrs. Cannon to Estis the land is described as having been patented to the heirs of R. J. Scott. She inherited from John and Sarah Scott, the parents and heirs of the deceased soldier R. J. Scott.

That she sold *as heir* charged those taking the lands through her deeds with the burden of ascertaining such relation between her and the grantee named in the patents. This would be satisfied upon showing such relationship in fact between R. J. Scott and his parents and ascertaining their heirs at law.

On the trial Ikard, the grantor of Slayton, the appellant, testified that at the time of his purchase and payment of the purchase money he had no notice of the will of John Scott, and that he thought he was getting a good title to the lands. It is insisted that from his making no inquiry into facts he should have known likely to attend such chain of title through a deceased person, Ikard is chargeable with some degree of neg-

ligence which should affect his innocence as a purchaser; that he is chargeable with what he might have known upon inquiry. Súgden on Vendors, p. 1057. It appears also that no search or inquiry within the State would have discovered the probate of the will. It had not been probated or registered in Texas. We have stated that he was not chargeable with notice of the probate in Tennessee. There is no presumption of fact or of law that a decedent left a will. Where negligence or carefulness of investigation or inquiry would have reached the same failure no presumptions should follow from the presence of either.

In showing that Mrs. Cannon was the heir at law to one-fourth of the estate of John Scott, and that defendant was the purchaser under her apparent legal title, without actual notice and before the will was registered in Texas, he was entitled to protection of his possession. The judgment below should have given appellant one-fourth of the three tracts in which such interest was claimed.

Judgment will be reversed and is here rendered, giving to appellant one-fourth interest in the lands, the other parties taking three-fourths in the proportion given in the judgment. The judgment as to the other tract of land (569 acres in Wichita County) is not changed.

*Reversed and rendered.*

Opinion December 4, 1888.