**Opinion filed November 21, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00280-CV
_____

**PATCH ENERGY LLC; CANDLEWOOD RESOURCES, LLC; AND PRELLY MINERALS LLC, Appellants**

**V.**

**INDIO MINERALS LLC; GUNNER INVESTMENTS, LLC; GUNNER OIL SERIES, LLC; AND MADAKET ENERGY LLC, Appellees**

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV57378**

## O P I N I O N

This appeal concerns competing claims to a portion of a royalty interest that had been reserved in a 1930 conveyance of the mineral interest in land located in Midland County. At the center of the dispute is a will that had been sitting on deposit in Macon County, Illinois since 1974 when the testator died. The will was probated in Illinois in 2020, filed of record in Texas in 2021, and admitted to ancillary probate

in Texas in 2022. The appeal focuses on the effect of the belated Illinois probate, and the subsequent actions in Texas.

Appellees, Indio Minerals LLC, Gunner Investments, LLC, Gunner Oil Series, LLC, and Madaket Energy LLC (collectively Indio) claim superior title to the disputed portion of the interest under Texas probate law regarding foreign wills, asserting that the will was timely probated in Illinois in 2020 and Texas in 2021 and 2022.

Appellants, Patch Energy LLC, Candlewood Resources, LLC, and Prelly Materials LLC (collectively Patch) claim superior title to the disputed portion of the interest, asserting that, because the will was admitted to ancillary probate in Texas after Patch acquired title from the intestate heirs, it could not effectively convey title to Indio.

After the parties filed cross-motions for summary judgment, the trial court granted Indio's motion, denied Patch's motion, and entered a final judgment declaring Indio as the party with superior title.

In three issues, Patch asserts that the trial court erred when it (1) granted Indio's motion for summary judgment and denied Patch's cross-motion for summary judgment, (2) held that all Appellants were not bona fide purchasers of the disputed interest at issue, and (3) denied Patch's motion for new trial. We affirm.

*Background Facts*

In 1930, Viola Hoots Ash and her husband, T.C. Ash, conveyed by warranty deed their mineral interest in the northwest quarter of Section 21, Block 38, Township 4-South, Texas & Pacific Railway Company Survey, Midland County, Texas, to Joseph R. Vandeventer, but reserved an undivided one-eighth royalty interest in and to all oil, gas, and other minerals in, on, and under the property. We will refer to the reserved royalty interest as the Ash Interest. Viola died in Macon County, Illinois in 1974. Viola and her husband did not have children, and Viola's

husband predeceased her. Viola's will devised the Ash Interest to her sister, Mary Shock Henard.

Appellants describe themselves as "separate entities [that] work together to identify, purchase, and sell mineral and royalty interests throughout Texas." Patch discovered the Ash Interest in the tax rolls of Midland County in February 2020. Interested in acquiring the Ash Interest, Patch began researching Viola's estate in an attempt to identify her heirs. Patch inspected various databases, the real property records of Midland County, and the real property and probate records of several counties in Illinois, including Macon County. Christian Patry, the founder of Patch Energy LLC, stated in his affidavit that:

> [D]espite [a] diligent search, my team and I were unable to find any Last Will and Testament or administration of estate attributable to Viola Ash. As such, and based on my years of experience searching such records and locating mineral owners, I determined that Viola Ash had died without a will and sought to acquire the Ash Interest from Viola Ash's intestate heirs.

Christian contacted Viola's living heirs in the spring of 2020 and was able to purchase the interests of thirty-nine out of the forty-four heirs Patch identified.[1] When Patch contacted four of Henard's heirs in March 2020 to discuss potentially purchasing their interests, Patch was informed that Indio Minerals had already offered to purchase their interests. Patch later learned that Indio Minerals successfully purchased the four heirs' interests.

Appellees describe themselves as "affiliated companies that acquire and hold oil-and-gas interests." Christopher Sheffey, a partner of Indio Minerals, stated in his affidavit that he learned about the Ash Interest in February 2020. After inspecting the Midland County Real Property records and various websites/databases, Sheffey

---

[1]In 1974, Viola was survived by Henard and the children of Viola's five predeceased siblings. The 1974 heirs had since passed, but Patch was able to locate Viola's living heirs via public records and "conversations . . . with many heirs of Viola Ash."

3

learned that Viola had lived in Macon County, Illinois. After finding Viola's death certificate in the Macon County clerk records, Sheffey e-mailed the Macon County Circuit Court clerk on March 3, 2020, to see if Viola or her husband had a probated estate. The clerk informed Sheffey that the only thing she found was Viola's will, which had been deposited with the Macon County Circuit Court clerk's office three days after Viola's death in 1974.

After hiring Illinois counsel, Indio learned that, "because Viola's will was timely established in Macon County, it could be probated."[2] Sheffey researched Henard and learned that she died in 1979. Henard's will devised her real property to Ruth Shock Nielsen, Lois Shock Wood, and Letha Fae Major. After Sheffey concluded that each of Henard's devisees had passed, Sheffey determined that (1) the heir of Ruth Shock Nielsen is Beverly Marie Norton; (2) the heirs of Lois Shock Wood are Curtis Allen Thomas, David C. Thomas, Jennifer M. Bauer, and Randy W. Bauer; and (3) the heirs of Letha Fae Major are Maurine Joyce Gregory and William Randolph Major. Indio was able to purchase the interests of Curtis Allen Thomas, Jennifer M. Bauer, Randall W. Bauer, and Beverly Marie Norton. Patch had purchased the interests of William Randolph Major, David Clark Thomas, and Maurine Joyce Gregory.

Curtis Allen Thomas filed a Small Estate Affidavit in Midland on April 27, 2020. Thomas initiated the probate of Viola's will in Macon County in August 2020, and Viola's will was subsequently admitted to probate in Macon County. Viola's probated will was filed in the deed records of Midland County on February 26, 2021. *See* TEX. EST. CODE ANN. § 503.001 (West 2020). Finally, Viola's probated will was admitted to ancillary probate in Midland County in 2022. *See generally* EST. Ch. 501.

---

[2]An explanation of the relevant Illinois probate law is included in the "Analysis" section of this opinion.

In his affidavit, Christian stated that he became aware of the Illinois probate proceedings in "late 2020," but believed that the probate "had no effect on the disposition of the Ash Interest in Texas, so [they] continued to try and purchase the remaining Ash Interest from Indio." Christian stated that Patch and Indio attended a meeting on January 25, 2021, but Patch was unsuccessful in purchasing Indio's interest because "Indio insisted the probate action in Illinois dictated ownership of the Ash Interest and they felt they owned more than half of it."

Patch filed suit against Indio on February 3, 2021, asserting that Patch owned 88% of the Ash Interest and Indio owned 9% of the interest. Patch sought (1) a declaratory judgment that the Ash Interest passed under intestacy law, that Patch was a bona fide purchaser of the Ash Interest, that the filed Small Estate Affidavit had no effect on the distribution of real property, and that Patch owned 88% of the Ash Interest; (2) a removal of the cloud on title caused by Indio's recording of a Small Estate Affidavit and "claiming by recorded instruments a greater percentage of the Ash Interest than allowed by Texas law"; and (3) damages for financial injury to Patch caused by Indio's filing of fraudulent instruments, including the mineral and royalty deeds from Henard's heirs and the Small Estate Affidavit.

Indio counterclaimed, asserting that it owned 56% of the Ash Interest and Patch owned 44% of the interest. Indio sought (1) a declaratory judgment that Patch is not a bona fide purchaser of the Ash Interest because Patch took via quitclaim deed, and (2) a removal of a cloud on their title stemming from Patch's claimed ownership of the disputed portion of the Ash Interest. Patch filed an answer to Indio's counterclaim, reasserting that Viola did not die testate because "no valid Will of Ash was timely probated or filed under Texas law to dispose of Texas real property."

In the summer of 2021, the parties filed cross-motions for summary judgment based on the pleadings. The trial court denied both motions after a hearing.

5

On May 26, 2022, Indio subsequently took the deposition of Preston Patry, the owner of Prelly Materials LLC. In his deposition, Preston confirmed that he had sent an e-mail to the Macon County clerk regarding Viola's estate and learned on February 26, 2020, that Viola had a will on deposit and that the will had not been probated. Preston further confirmed that he created a "flowchart" on February 28, 2020, which included the information that Viola died with a will that had not been probated, and that he provided that flowchart to Christian "as [Christian] was purchasing the interest."[3]

Both parties filed second motions for summary judgment. Indio asserted in its motion that (1) Viola's interest passed through testacy to her devisees as a matter of law; (2) Patch is not a bona fide purchaser of Viola's interest because Patch had knowledge of the existence of Viola's will when it acquired deeds from Viola's heirs at law and because Patch took via quitclaim deed; (3) Patch's claim to remove cloud on title failed as a matter of law because Viola's will passed through testacy and Patch is not a bona fide purchaser; and (4) there was no evidence that Indio fraudulently filed instruments of record and no genuine issue of material fact on Patch's fraudulent-filing claim.

The relevant grounds in Patch's motion for summary judgment were: (1) the ancillary probate of Viola's will in Midland acted as a conveyance, and the ancillary probate did not affect conveyances that occurred before it; (2) Patch was not charged with notice of Viola's will until it was probated in Midland; and (3) no genuine issue of material fact existed in the case and Patch was entitled to judgment as a matter of law.[4]

---

[3]Both the e-mail exchange between Preston and the Macon County clerk and the flowchart Preston created are attached as exhibits to Indio's motion for summary judgment.

[4]Patch does not appeal the trial court's dismissal of its fraudulent-filing claim.

In its response to Patch's motion for summary judgment, Indio asserted that Patch's motion was "nothing more than a smokescreen designed to distract the Court from the only real issue in the case—is Patch a bona fide purchaser under Texas Estates Code § 256.003(c)?"[5] In turn, Patch responded to Indio's motion for summary judgment—specifically Indio's contention that the probate of Viola's will in Illinois is dispositive of the case—by asserting that "[t]he probate laws of Illinois have no bearing on the transfer of real property in Texas" because, under Texas law, probate actions must commence within four years of a testator's death.

The trial court granted Indio's motion for summary judgment and entered a final judgment holding that Patch take nothing because it was not a bona fide purchaser of any interest that did not arise under Viola's will. The trial court further denied any of Patch's remaining claims and ordered that each party was responsible for paying its own attorney's fees and that Patch was responsible for paying taxable costs incurred by Indio.

Patch filed a motion for new trial and motion to modify judgment contending, among other things, that Indio's claims were barred by judicial estoppel. Patch asserted that its subsequent discovery of a Reeves County lawsuit in which Indio had taken "the complete opposite position" to its argument in the present case constituted newly discovered evidence. The motion was overruled by operation of law.

*Analysis*

*The Date that a Foreign Will is Admitted to Ancillary Probate in Texas does not Determine when Title Vests*

In its first issue, Patch contends that the trial court erred when it granted Indio's motion for summary judgment and denied Patch's motion for summary judgment because Patch acquired its interest before Viola's will was admitted to

---

[5]Conversely, Patch asserted that "this case is not about whether Patch is a bona fide purchaser under Texas law."

ancillary probate in Midland, thus making Patch the party with superior title to the disputed interest. As we noted previously, Patch contends that until the will was admitted to ancillary probate in Texas, it was ineffective to pass title. This contention is incorrect.

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When the parties file competing motions for summary judgment and the trial court grants one and denies the other, "we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015). In reviewing traditional summary judgments, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller*, 168 S.W.3d at 816. If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence

8

that would preclude summary judgment.  *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

Patch does not dispute that Viola's will was timely probated in Illinois in accordance with Illinois law, or that it was timely admitted to ancillary probate in Texas.  Rather, Patch asserts that (1) a foreign will has no effect on the passage of a real property interest unless and until it has been admitted to ancillary probate in Texas; and (2) a foreign will acts as a conveyance and vests title in a testator's devisees *as of* the date it is recorded in Texas, and not before.  Thus, Patch contends the only way Indio could have acquired superior title to the disputed portion of the Ash Interest is if Viola's will was probated or recorded in Midland County *before* Patch obtained its deeds from Viola's heirs at law.

Section 101.001 of the Estates Code provides that, if a person dies leaving a lawful will, "all of the person's estate that is devised by the will vests immediately in the devisees."  EST. § 101.001 (West 2020).  However, Patch asserts that "the estates code has carved out an exception to that rule for foreign wills," as evidenced by Section 503.051, which states that:

> A copy of a foreign will or other testamentary instrument . . . (1) take[s] effect and [is] valid as a deed of conveyance of all property in this state covered by the instrument; and (2) ha[s] the same effect as a recorded deed or other conveyance of land *beginning at the time the instrument is delivered to the clerk to be recorded*.

EST. § 503.051 (emphasis added).  Patch contends that the language of Section 503.051 necessarily means that title to the Ash Interest did not pass until Viola's will was probated in Midland County, since the will could only "take effect" upon delivery to the Midland County court clerk.

Patch cites *Slaton v. Singleton*, 9 S.W. 876, 878 (Tex. 1888) in support of its interpretation.  In *Slaton*, the Texas Supreme Court addressed a former version of Section 503.051.  The former version states that:

9

> Every . . . will and testament, or testamentary instrument, and its probate, which shall be attested and proven as provided in section 1 of this act, and delivered to the clerk of the proper court to be recorded, shall take effect and be valid and effectual as a deed of conveyance of said property, and the record thereof shall have the same force and effect as the record of deeds, and other conveyances to land, from the time when such instrument was delivered to such clerk to be recorded, and from that time only.

*Id.* at 878. However, that statute was one of many analyzed in order to determine the root issue in *Slaton*: whether an innocent buyer could be charged with notice of a will that had been probated in Tennessee, but not in Texas. *Id.* at 878–79. Ultimately, the *Slaton* court held that:

> Inasmuch as the foreign probate of a will gives no validity to such will until certified to and registered in some county within the state, we may conclude that such *foreign probate proceedings are not chargeable as notice upon the purchaser* of lands affected thereby, within the state, until after such registration.

*Id.* at 878 (emphasis added). Therefore, *Slaton* did not hold that a foreign will vests *title* in a testator's devisees at the time the will is probated in Texas. Rather, the *Slaton* court held that a bona fide purchaser could not be charged with notice of a foreign will that had not been probated in Texas.

Patch additionally asserts that it has superior title to the disputed portion of the Ash Interest because Viola was presumed to have died intestate at the time Patch purchased its interests. Patch cites Section 71.003 of the Texas Property Code in support of its contention, which states: "An individual is presumed to have died intestate if, on or before the seventh anniversary of the date of the individual's death, the individual's will has not been recorded or probated in the county where the individual's property is located." *See* TEX. PROP. CODE ANN. § 71.003 (West 2023). However, Chapter 71 of the Property Code is titled "Escheat of Property," and discusses when the State may initiate escheatment proceedings. *See generally*, PROP. Ch. 71.

Patch is correct in noting that the San Antonio Court of Appeals cited Section 71.003 in holding that a decedent with a purported will was presumed to have died intestate after seven years. *See Radcliffe v. Tidal Petroleum, Inc.*, 521 S.W.3d 375, 379–81 (Tex. App.—San Antonio 2017, pet. denied). In *Radcliffe*, the court cited the escheat statute's presumption of intestacy in a case where the decedent's will was not timely offered as summary judgment evidence. Thus, *Radcliffe* is distinguishable because the court had no evidence of a will to consider. *See id.* Unlike the situation in *Radcliffe*, Viola's will was a part of the summary judgment evidence in this case. We conclude that Section 71.003's presumption of intestacy is inapplicable to the case before us because this is not an escheat proceeding, and we have evidence of Viola's will.

Indio asserts that a foreign will that has been probated in Texas has the same effect as a domestic will and transfers title to real property to the testator's devisees on the date of the testator's death. Indio cites two cases in support of its proposition: *Bruni v. Vidaurri* and *Long v. Shelton*. *See Bruni v. Vidaurri*, 166 S.W.2d 81, 93 (Tex. 1942); *Long v. Shelton*, 155 S.W. 945, 948 (Tex. App.—Texarkana 1913, writ ref'd).

In *Bruni*, the supreme court rejected the argument that title under a foreign will does not vest in a testator's devisee until the will has been admitted to probate in Texas and held that:

> [T]he title of a devisee under a foreign will duly probated, like that under a domestic will, becomes effective, or vests, as of the date of the testator's death, the probate in the foreign state and the record in Texas being 'legal formalities required to evidence and give full effect to that right.'

*Bruni*, 166 S.W.2d at 93 (quoting *Haney v. Gartin*, 113 S.W. 166, 168 (Tex. Civ. App. 1908, writ ref'd) (holding that a will is not "subject to the objection that it conferred an after-acquired title because recorded in Texas after the institution of the

suit" and that "[t]he will conferred the right upon [a devisee] upon the death of the testator.'"))

In *Long*, the Texarkana Court of Appeals discussed a prior version of Section 503.051 and held that:

> The language used [in the statute] was not intended to fix the event or the time when the title to the property devised should vest in the devisee, but to prescribe certain requirements as conditions precedent to the use of the foreign will *as evidence of title and notice of its existence* . . . when [a foreign will] has been probated, the title of the devisee *relates back to the death of the testator, and becomes effective from that date. March v. Huyter*, 50 Tex. 243; *Ryan v. Railway Co.*, 64 Tex. 239. The same legal effect should be given a foreign will, subject, however, to the rights of supervening purchasers without notice.

*Long*, 155 S.W. at 948 (emphasis added) (internal citations omitted).

In its reply brief, Patch asserts that *Bruni* and *Long* are distinguishable from the case before us. Patch contends that the courts in *Bruni* and *Long* held that title vested in the devisees at the time of the testator's death because the foreign wills in those cases were probated outside of Texas "well prior" to the time the title disputes arose. Thus, Patch asserts, *Bruni* and *Long* support Patch's contention that probating Viola's will "gave effect to the terms of the Will only after the date it was probated and recorded in Midland." But, as stated in *Bruni*, the foreign probate and the recording of the will in Texas were "legal formalities required to evidence and give full effect" to a devisee's title. 166 S.W.2d at 93 (internal quotations and citations omitted). Similarly, *Long* explains that:

> An estate by devise takes effect immediately upon the death of the testator unless otherwise directed, and the property then passes to the devisee. The different legal requirements as to probating and recording wills are merely designed as means to substantiate, preserve, and give notice of such instruments as evidences of title.

12

*Long*, 155 S.W. at 948. Therefore, both *Bruni* and *Long* held that the probate of a foreign will in Texas vests title in a testator's devisees, effective as of the date of the testator's death. *See Bruni*, 166 S.W.2d at 93; *Long*, 155 S.W. at 948.

The San Antonio Court of Appeals subsequently addressed *Bruni* and *Long* in *Sun Operating Ltd. Partnership v. Oatman*, 911 S.W.2d 749, 754–55 (Tex. App.—San Antonio 1995, writ denied). The court described the holding in *Bruni* as follows:

> In *Bruni* the court ruled that a deed for land in Zapata County executed by the devisee in 1928 was valid, because title had vested in the devisee upon the owner's death in 1889 and the will had been duly probated in Mexico, even though the will was not placed in the records of Zapata County until 1930.

*Id.* (citing *Bruni*, 166 S.W.2d at 92–93). The court in *Oatman* cited *Long* for the proposition that:

> [U]nder the general rule, when a will has been probated, the title of the devisee relates back to the death of the testator and becomes effective from that date. The same legal effect should be given a foreign will, subject, however, to the rights of supervening purchasers without notice following reasonable inquiry.

*Id.* at 755 (citing *Long*, 155 S.W. at 948). Thus, under *Bruni* and *Long*, the death of the testator is the event that vests title in the devisee of a foreign will, rather than the ancillary probate of the will in Texas. *See id.*

Because neither the Estates Code nor established case law support Patch's assertion that a devisee's interest under a foreign will does not vest until the foreign will has been admitted to ancillary probate in Texas, the trial court did not err by denying Patch's motion for summary judgment simply because Patch purchased its interest before Viola's will was admitted to ancillary probate in Midland County. However, the question of whether the trial court erred in granting Indio's motion for summary judgment based on its contention that Patch was not a bona fide purchaser of its interest remains. *See id.*

13

*Patch's Status as a Bona Fide Purchaser*

We must initially address Indio's claim of briefing waiver by Patch. Indio asserts that we must affirm the trial court's judgment because Patch did not address on appeal the possibility that the trial court could have ruled in favor of Indio based on Indio's assertion that Patch was not a bona fide purchaser since it took via quitclaim deed. Indio cites *McCoy v. Rogers* in support of its proposition. *See* 240 S.W.3d 267, 272 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (holding that a court of appeals "must affirm when a judgment may have been rendered, whether properly or improperly, on a ground not challenged on appeal."). However, we construe briefs liberally, so as to avoid waiver. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020) (citing *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (per curiam)). "While it is preferred that parties independently brief distinct legal theories, certain claims and theories can be 'inextricably entwined,' or the evidence and nature of claims may contain overlapping legal theories." *See id.* at 732–33 (internal citations omitted).

Patch's primary theory is that its status as a bona fide purchaser is irrelevant under its interpretation of the law, and that the correct inquiry is whether Patch had statutory notice of Viola's will when purchasing its interest. Accordingly, Patch has addressed the possibility that the trial court could have ruled in Indio's favor under its quitclaim theory by asserting that Patch's status as a bona fide purchaser is irrelevant and would thus be incorrect to rely upon.

The proper questions before us are (1) whether Patch's status as a bona fide purchaser is relevant; and (2) if so, whether the trial court could have properly granted Indio's motion for summary judgment based on its contention that Patch was not a bona fide purchaser of its interest because it took via quitclaim deed.

Patch cites two sections of the Estates Code in support of its proposition that its status as a bona fide purchaser is irrelevant: (1) Section 252.151, which states that

14

depositing a will is for purposes of safekeeping and that, "[f]or purposes of probate, a will deposited . . . may not be treated differently than a will that has not been deposited"; and (2) Section 252.153, which states that the deposit of a will "does not constitute notice, constructive or otherwise, to any person as to the existence or the contents of the will."  Patch contends that, regardless of its bona fide purchaser status, it did not have statutory notice of Viola's will when it acquired its portion of the Ash Interest because Viola's will was only on deposit in Illinois at the time.

There is a flaw in Patch's argument—Viola's will was on deposit in Illinois, not Texas.  While Patch is generally correct in its assertion that Texas law controls the disposition of Texas lands, it is clear that the Texas Estates Code's provisions regarding the deposit of a will only pertain to the deposit of a will in Texas.  As we have already explained, the proper portion of the Texas Estates Code to follow is that regarding foreign wills; and, as Section 501.001 states,

> The written will of a testator who was not domiciled in this state at the time of the testator's death may be admitted to probate at any time in this state if: (1) the will would affect any property in this state; and (2) proof is presented that the will stands probated or otherwise established in any state of the United States[.]

*See* EST. § 501.001.  Thus, the ancillary probate of a foreign will in Texas necessarily depends upon whether the will was properly probated in the foreign state, meaning the foreign state's probate laws are relevant.

Texas imposes time limits upon when a Texas will may be admitted to probate.  EST. §256.003.  But no such time limit exists in Illinois:

> Some states have a statute which limits the period following a testator's death in which a will may be admitted to probate.  There is no such statute in Illinois.  Accordingly, any otherwise valid will may be filed and admitted to probate, regardless how long the period that has elapsed.

Robert S. Hunter, *Time Limit for Filing the Will*, 18 Ill. Prac., Estate Planning & Admin. § 104:8 (4th ed.).  Illinois treats the deposit of a will as the first step in the

probate process. *See id.* (Illinois law requires that an Illinois will must be "filed promptly if it is found."); *see also* 755 ILCS 5/6-1, 6-2. Thus, Patch's argument that Viola's will being on deposit in Illinois could not provide Patch with notice of the will under Sections 252.151 and 252.153 is incongruent with Section 501.001, which allows foreign wills that have been properly probated outside Texas to be probated in Texas at any time if the will had been validly probated elsewhere.

Moreover, Patch's assertion that its status as a bona fide purchaser is irrelevant is misplaced under both case law and Section 256.003(c) of the Estates Code. The court in *Long* held that for foreign wills, "the title of the devisee relates back to the death of the testator, and becomes effective from that date." 155 S.W. at 948. However, "supervening purchasers" are protected if they purchased their interest without notice. *Id.*; *see Oatman*, 911 S.W.2d at 755. Thus, the question of whether Patch is a bona fide purchaser is relevant. *See Oatman*, 911 S.W.2d at 755; *Long*, 155 S.W. at 948.

Additionally, Section 256.003(c) suggests[6] that Patch's status as a bona fide purchaser is relevant to our inquiry. The statute provides that:

> A person who for value, in good faith, and *without knowledge of the existence of a will* purchases property from a decedent's heirs after the fourth anniversary of the decedent's death shall be held to have good title to the interest that the heir or heirs would have had in the absence of a will, as against the claim of any devisee under any will that is subsequently offered for probate.

*See* EST. § 256.003(c) (emphasis added). While the statute references a four-year limit after the death of the testator for the probate of a will, it also contains an exception for foreign wills. *Id.* at § 256.003(a). Thus, it appears that the four-year

---

[6]For reasons that are not expressed, the court in *Oatman* did not reference Section 256.003 in its analysis. *Oatman*, 911 S.W.2d at 755. Instead, the court cited case law for the proposition that "[a] bona fide purchaser is one who buys property in good faith for valuable consideration and without actual or constructive notice of outstanding claims." *Id.* (citing *Equitable Tr. Co. v. Roland*, 721 S.W.2d 530, 534 (Tex. App.—Corpus Christi–Edinburg 1986, writ ref'd n.r.e.).

limit is inapplicable to a foreign will that is properly admitted to probate in another state or foreign nation. *Id.*; *see* EST. § 501.001; 74 TEX. JUR. 3d Wills § 362 *Time to Commence Probate, Generally; Four-Year Limit to Probate Will* (2024) ("With the exception of foreign wills, a will may not be admitted to probate after the fourth anniversary of the testator's death.").

Indio presents two different assertions that Patch had knowledge of the existence of Viola's will. The first is that Patch judicially admitted that it had knowledge of Viola's will in its motion for summary judgment. Patch's motion for summary judgment, referring to the three Appellant entities as the collective "Patch," states the following two facts:

> 4. In the course of its research, Patch learned a Last Will and Testament for Ash was deposited with the Macon County, Illinois clerk for safe keeping but that it had never been probated. Exhibit F at 90:10-92:24 (including Deposition Exhibit P2), 113:1-19.

> 5. Based on years of experience as registered landmen, and having located no probated will for Ash in any state, Patch continued pursuing purchases of the Ash Interest from Ash's heirs at law.

Indio contends that these facts are a judicial admission that Patch had knowledge of Viola's will before purchasing its interest.

A judicial admission must be a clear, deliberate, and unequivocal statement. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex. 2000); *House of Yahweh v. Johnson,* 289 S.W.3d 345, 352 (Tex. App.—Eastland 2009, no pet.); *see also Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001). Because the motion for summary judgment continuously refers to all three Appellant entities as "Patch" throughout its statement of facts, it is clear that the motion was referring to all three Appellant entities as the collective "Patch" in Paragraphs 4 and 5, especially considering the Patch group also referred to themselves as "experienced land**men**" in Paragraph 5. (Emphasis added).

Further, in Paragraph 4, Patch cited to the portion of Preston's deposition where he confirms that the Macon County clerk informed him on February 26, 2020 that Viola had a will on file. Patch attached the portion of Preston's deposition as an exhibit to its motion for summary judgment. One would assume that Patch would have clarified that it was referring only to Preston admitting that he had knowledge of Viola's will if it had intended to do so, or that it would not have cited to the portion of Preston's deposition confirming that the Macon County clerk e-mailed him on February 26, 2020 advising him of the existence of Viola's will, if Patch had wanted to assert that all three Appellant entities became aware of the will at a later date. Therefore, we conclude that Patch clearly, deliberately, and unequivocally judicially admitted to its knowledge of Viola's will in its motion for summary judgment. *See Holy Cross Church of God in Christ*, 44 S.W.3d at 568.

*A Party that Takes an Interest by a Quitclaim Deed Cannot be a Bona Fide Purchaser*

Indio correctly asserts that a party cannot be a bona fide purchaser of an interest if it took via quitclaim deed. As the Amarillo Court of Appeals stated in *Jackson v. Wildflower Production Company*,

> Since 1871, courts of this State have considered it "settled law" that a party receiving a quitclaim deed to land cannot avail himself of the defense of an innocent purchaser for value without notice. Because the grantee in a quitclaim deed receives only whatever right, title, interest, or claim the grantor had, "[a] quitclaim deed conveys upon its face doubts about a grantor's interest and a buyer is necessarily put on notice as to those doubts." As such, the grantee under a quitclaim deed is deemed to be on notice of all legal or equitable claims, recorded or unrecorded, existing in favor of a third-party at the time the quitclaim deed was delivered. The question is not one of being merely put on inquiry; the notice is absolute and conclusive as to all claims. Simply stated, as a matter of law, the grantee under a quitclaim deed takes the property subject to all adverse legal and equitable claims affecting title to the property and cannot be an innocent purchaser because the deed

itself places the grantee on notice that there may be superior claims to title.

505 S.W.3d 80, 91 (Tex. App.—Amarillo 2016, pet. denied) (internal citations omitted).

What typically distinguishes a deed from a quitclaim deed is that "the granting clause in a deed purports to grant and convey the described property, whereas the granting clause in a quitclaim deed only purports to grant and convey whatever 'right, title, and interest' the grantor has in that property at the time the instrument is executed and delivered." *Id.* at 88–89 (quoting *Cook v. Smith*, 174 S.W. 1094, 1095 (Tex. 1915); *Chicago Title Ins. Co. v. Cochran Investments, Inc.*, 602 S.W.3d 895, 901 (Tex. 2020); *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 486–87 (Tex. 2005); *Enerlex, Inc. v. Amerada Hess, Inc.*, 302 S.W.3d 351, 354 (Tex. App.—Eastland 2009, no pet.). A quitclaim deed, on its own, does not establish any title in the grantee; it merely conveys any interest the grantor *may* have. *Jackson*, 505 S.W.3d at 89 (citing *Rogers v. Ricane Enters.*, 884 S.W.2d 763, 769 (Tex. 1994)). "Quitclaim deeds are commonly used to convey 'interests of an unknown extent or claims having a dubious basis.'" *Geodyne*, 161 S.W.3d at 487 (quoting *Porter v. Wilson*, 389 S.W.2d 650, 654–55 (Tex. 1965)).

Patch used two different deed forms when making its purchases—one titled "Quit Claim Deed" and one titled "Mineral and Royalty Deed." In its motion for summary judgment, Indio asserted that both forms only convey the grantor's rights and not the property itself.

In the deeds titled "Quit Claim Deed," Indio points to the language that the grantor conveys "all right, title, and interest to all of the surface and oil, gas and other minerals . . . that Grantor may own," and that the grantor "grants, sells and quit claims to Grantee . . . without express or implied warranty." The "Quit Claim Deed" forms contain the key language of a quitclaim deed and only purports to convey

19

whatever title the grantor may own. *See Jackson*, 505 S.W.3d at 88–89. And notably, the deeds themselves are titled "Quit Claim Deed."

In the deeds titled "Mineral and Royalty Deed," Indio points to the language that the grantor grants "all right, title, and interest to all of the oil, gas and other minerals . . . that Grantor may own" and the portion that provides that, "It being the intent of this Mineral Deed to convey all interest in and to all of the oil, gas and other minerals owned by the Grantor." Indio asserts that conveying only the right, title, and interest that the Grantor may own and the intent of the Grantor being to convey his or her interest in the property, rather than title, makes the Mineral and Royalty deeds quitclaim deeds, as well. Again, these forms only intend to convey the Grantor's interest, whatever that may be, to Patch. The qualifier of "may own" is particularly indicative of a quitclaim deed. *See Jackson*, 505 S.W.3d at 89; *Geodyne*, 161 S.W.3d at 487 (citing *Porter*, 389 S.W.2d at 654–55). Accordingly, Indio correctly asserts that Patch is not a bona fide purchaser of its interest because it took via quitclaim deeds.

The trial court did not err in granting Indio's motion for summary judgment and declaring Indio as the party with superior title because (1) Indio acquired its interest from Viola's devisees under her duly probated will and (2) Patch was not a bona fide purchaser of its interest. We overrule Patch's first issue.

*Collective Status of Appellants as Bona Fide Purchasers*

In its second issue, Patch asserts that, in the "unlikely event" we find that Preston had statutory notice under Section 503.001 of the Estates Code, the trial court still erred in granting Indio's motion for summary judgment because Indio did not present evidence to support a finding that Patch Energy or Candlewood Resources were not bona fide purchasers of their interest. Specifically, Patch asserts that Preston was the only person in the e-mail conversation with the Macon County clerk regarding Viola's will and that Indio presented no evidence demonstrating that

20

Preston's knowledge could be imputed to Christian Patry or Candlewood prior to Patch's purchase of their portion of the Ash Interest.

We have already determined that statutory notice under Section 503.001 is the incorrect inquiry to determine whether Appellants were bona fide purchasers of their interest. Further, we have already determined that Appellants were not bona fide purchasers of their interest because they all judicially admitted that they had knowledge of Viola's will in their motion for summary judgment and because they took via quitclaim deeds.

Because we have already determined that Patch was not a bona fide purchaser of its interest, we need not determine whether the evidence Indio provided in its motion for summary judgment proved as a matter of law that Preston's knowledge of Viola's will could be imputed to Christian Patry and Candlewood. We overrule Patch's second issue.

*Motion for New Trial*

In its third issue, Patch asserts that the trial court erred in denying its motion for new trial because Patch invoked the doctrine of judicial estoppel and presented newly discovered evidence of Indio making "wholly inconsistent arguments" in a separate Reeves County suit to terminate a receivership. Patch asserts that Indio's inconsistent positions have "run afoul of the legal and equitable tenets on which our system is based," citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895) in support of its proposition. Indio asserts that Patch's judicial-estoppel argument is not preserved because it was not a ground in Patch's motion for summary judgment and that, even if the point of error was preserved, Indio has not made any inconsistent arguments between the two lawsuits.

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 117 (Tex. 2018) (quoting *Kane v. Nat'l Union Fire*

21

*Ins.*, 535 F.3d 380, 385 (5th Cir. 2008)). Assuming without deciding that Patch has a properly preserved claim of judicial estoppel, there is no inconsistent argument between the case before us and the Reeves County receivership termination.

In its motion for new trial, Patch described Indio's "inconsistent position" as follows:

> In the Reeves County case, Indio claims it rightfully acquired mineral interests from L.E. Wilson's intestate heirs despite having knowledge of the existence of his unprobated will on file in Cook County, Illinois . . . yet it represented to the Reeves County court that its purchase from intestate heirs entitled it to funds in the court registry. Indio's position in Reeves County that the probate of a will is the operative fact and/or that it is a bona fide purchaser is wholly inconsistent with its position in this case.

On appeal, Indio's response to Patch's arguments is that different facts lead to different conclusions. As stated in Indio's brief: "The law is the same in each lawsuit—a probated will in Texas can change who is in the chain of title. It is just that, in one, there is a probated will while in the other, there is not." Indio's distinction tracks our earlier holding that a foreign will that has been probated in Texas vests title in the testator's devisees as of the testator's time of death—not as of the time of probate in Texas—subject to the claims of bona fide purchasers who purchased their interests in the interim period of the testator's death and the probate of the testator's will in Texas. *See Long*, 155 S.W. at 948 (holding that, once a foreign will has been probated, "the title of the devisee relates back to the death of the testator, and becomes effective from that date"); *see also Bruni*, 166 S.W.2d at 93; *Oatman*, 911 S.W.2d at 755.

Therefore, Indio is correct in its assertion that the two lawsuits apply the same law in different contexts and that Indio has not taken inconsistent legal positions

22

between the two matters.[7]  Accordingly, the trial court did not err in denying Patch's motion for new trial based upon Patch's judicial-estoppel claim.  We overrule Patch's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


November 21, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[7]We also note that, had the Reeves County decedent's will been probated, Indio could claim that it was a bona fide purchaser of the intestate heirs' interests.

23